EL ESTADO LIBRE ASOCIADO DE PUERTO RICO, ETC., demandante y recurrido, *v.* NORTHWESTERN CONSTRUCTION, INC., CENTRAL SAN JOSÉ, INC., y OTROS, JOSÉ GRAJALES SANTOS Y SU ESPOSA MYRIAM SUÁREZ, demandados y recurrente la primera; NORTHWESTERN CONSTRUCTION CO., ETC., demandante y recurrente, *v.* AUTORIDAD DE LAS FUENTES FLUVIALES, demandada y recurrida; LA SOCIEDAD DE GANANCIALES constituida por EDMUNDO HERNÁNDEZ Y SU ESPOSA OLGA SÁNCHEZ AMARAL, demandantes, *v.* LA SOCIEDAD DE GANANCIALES constituida por JOSÉ GRAJALES SANTOS Y SU ESPOSA DOÑA MYRIAM SUÁREZ ALFONSO, NORTHWESTERN CONST., INC., demandados; NORTHWESTERN CONSTRUCTION, INC., interventora y recurrente.

*Número:* R-69-207          *Resuelto:* 13 de febrero de 1975

*Confirmada.*

EL JUEZ ASOCIADO SEÑOR TORRES RIGUAL emitió la opinión del Tribunal.

Debemos decidir en este recurso la pugna entre la recurrente Northwestern Construction, Inc., y la recurrida Autoridad de las Fuentes Fluviales relativa al momento en que la Autoridad propiamente se incautó de un derecho de servidumbre sobre unos terrenos pertenecientes a Northwestern. Ambas partes tienen vivo interés en dilucidar el momento de la incautación porque éste es el que determina la valoración de los terrenos y, por ende, la compensación que debe pagar la Autoridad por el derecho de servidumbre. *E.L.A.* v. *Pérez,* 98 D.P.R. 781 (1970); *United States* v. *Dow,* 357 U. S. 17 (1957); 3 Nichols, *On Eminent Domain,* sec. 8.5 págs. 26–27 (Tercera Edición Revisada).

Conviene examinar brevemente los hechos esenciales del caso para una mejor comprensión de las cuestiones envueltas.

En el 1941 la Autoridad de Fuentes Fluviales obtuvo de los anteriores dueños un permiso "esencialmente revocable"

para tender una línea eléctrica sobre los terrenos. La línea ha estado en operación continua e ininterrumpidamente desde esa fecha. En el 1960 Northwestern instó demanda sobre negatoria de servidumbre y daños y perjuicios. La Autoridad adujo la defensa de usucapión del derecho de servidumbre. Posteriormente en el 1963 la Autoridad presentó demanda de expropiación forzosa, consignó la cantidad de $2.00 como el valor estimado de la servidumbre y presentó la Declaración de Adquisición y Entrega Material de la Propiedad; todo ello a tenor con el Art. 5(a) de la Ley General de Expropiación Forzosa, aprobada el 12 de marzo de 1903, 32 L.P.R.A. sec. 2907. Se consolidaron ambos casos.

Aparece de los hechos estipulados por las partes que en el 1957 Northwestern adquirió los terrenos con el propósito de urbanizarlos. A solicitud de Northwestern la línea fue movida de sitio provisionalmente para facilitar los trabajos de la urbanización pero fue posteriormente restituida al sitio original. Northwestern pagó sin protestar el costo de la relocalización y no cuestionó el derecho de la Autoridad a tender la línea sobre los terrenos. En base a estos hechos el tribunal de instancia formuló la siguiente conclusión de derecho:

"Cuando Northwestern adquiere las tierras y trata de urbanizarlas se encuentra con que la AFF reclama, a título de dueña un derecho de servidumbre para pasar sus líneas eléctricas. En ese momento Northwestern no cuestiona la validez de esa reclamación. No impugna las pretensiones de la AFF ante los tribunales ni formula sus objeciones y reparos ante la propia AFF, la Junta de Planificación o en sitio alguno. Es en ese momento, a nuestro juicio, cuando la AFF actuando so color de autoridad demuestra su intención, en forma inequívoca, de tomar posesión en forma permanente de la propiedad y dedicarla a un uso público. Es entonces que hay una incautación (taking) y surge el derecho del propietario a obtener una justa compensación. La compensación, de acuerdo con los principios antes expuestos, se computará tomando en consideración el valor de la propiedad al momento de la incautación 'taking'. (Conclusión de Derecho Núm. VII de sentencia de 26 de agosto de 1968.)

A la luz de lo anterior, el tribunal de instancia dictó sentencia parcial resolviendo que la Autoridad no había adquirido un derecho de servidumbre. Fundó su dictamen en las disposiciones de los Arts. 373, 376 y 1842 del Código Civil, 31 L.P.R.A. secs. 1447, 1462 y 5263, al efecto de que los actos ejecutados en virtud de licencia o por mera tolerancia del dueño no aprovechan la posesión. La defensa de usucapión fue así desestimada, quedando obligada la Autoridad a compensar a Northwestern el valor de la servidumbre. Posteriormente se dictó sentencia final fijándose como fecha de la incautación la del 28 de agosto de 1957 y condenando a la Autoridad a pagar el valor de los terrenos a esa fecha. ([1])

Northwestern sostiene que la fecha de incautación es la de abril de 1963 cuando la Autoridad presentó la demanda de expropiación forzosa y no la de agosto de 1957, como concluyó el tribunal de instancia. Fundamenta su posición en dos argumentos: 1) que en Puerto Rico no existe la incautación de hecho (*taking de facto*) ya que la Sec. 9 de la Carta de Derechos de la Constitución del Estado Libre Asociado y la Sec. 5(c) de la Ley General de Expropiación Forzosa, 32 L.P.R.A. sec. 2909, requieren el pago previo de la justa compensación como condición precedente al derecho de expropiación, 2) que de existir la incautación de hecho, la misma no se efectuó porque la Autoridad entró a los terrenos en virtud de un permiso otorgado por los anteriores dueños y, por lo tanto, su posesión no fue en concepto de dueño.

---

([1]) La conclusión sobre el valor de los terrenos lee:

"La Autoridad de las Fuentes Fluviales viene obligada a pagar a Northwestern Construction Corporation los 624.311 metros cuadrados ocupados por las torres de la servidumbre número 1, conocida como servidumbre de García Méndez, a razón de $1.05 por metro cuadrado. Este era el valor del terreno a la fecha del 'taking', o sea, al 28 de agosto de 1957. La servidumbre número 1 ocupa además con sus líneas 6,980.99 metros cuadrados. Estos tienen un valor de $7,330.03. En cuanto al terreno ocupado solamente por las líneas la Autoridad de las Fuentes Fluviales sólo viene obligada a indemnizar a la demandante en el 50% de su valor, o sea, en la suma de $3,665.01." (Conclusión de Derecho Adicional de sentencia de 2 de julio de 1969.)

Ambos fundamentos son erróneos según veremos a continuación.

█ No es correcto que la Sec. 9 de la Carta de Derechos requiera el pago de la compensación con anterioridad a la incautación de la propiedad. Dicha sección provee que: "No se tomará o perjudicará la propiedad privada para uso público a no ser mediante el pago de una justa compensación y de acuerdo con la forma provista por ley." Su propósito es garantizar una justa compensación, sin que se derive de su texto la intención de que la misma sea con anterioridad a la incautación. Tiene el mismo alcance que tenía su antecedente en la Carta Orgánica, párrafo 9 del Art. 2, de la cual se calcó. (²) Al respecto expresó el Delegado Jaime Benítez, Presidente de la Comisión de la Carta de Derechos:

"Yo lo único que quería decir era que el lenguaje que se ha usado aquí es textualmente el mismo que existe en la actualidad en la Carta Orgánica, y se ha usado deliberadamente para incorporar los derechos y las prerrogativas conocidas en ese sentido, y las decisiones". (III *Diario de Sesiones, Convención Constituyente* 1554.)

Véase, además, el Informe de la Comisión de la Carta de Derechos, *op. cit.*, Tomo IV, pág. 2567.

En *P.R. Ry., Lt. & P. Co.* v. *Ortiz, Juez,* 59 D.P.R. 921 (1942), este Tribunal interpretó el alcance del párrafo 9 de la sección 2 de la Carta Orgánica rechazando una contención similar a la de Northwestern. Adoptamos allí la regla general prevaleciente en la jurisdicción federal y en los Estados Unidos resolviendo que Puerto Rico tiene la facultad de expropiar sin necesidad del previo pago de la compensación para poder ocupar la propiedad. *Id.* 941–942. La Convención Constituyente derrotó expresamente una propuesta del Dele-

---

(²) El párrafo 9, Sec. 2 de la Carta Orgánica leía:

"La propiedad particular no será tomada ni perjudicada para uso público, a no ser mediante el pago de una justa compensación fijada en la forma provista por ley."

gado Celestino Iriarte para que se agregara al texto de la vigente Sec. 9 de la Carta de Derechos la frase "previa la correspondiente indemnización", incorporando así lo resuelto en *P.R. Railway, Light & Power Co.* Véase II *Diario de Sesiones, Convención Constituyente* 1509–1510.

■ Tampoco la Sec. 5(c) de la Ley General de Expropiación Forzosa, *supra*, requiere indefectiblemente el pago de la compensación con anterioridad a la incautación. Dicha sección dispone en lo aquí pertinente que: "Con anterioridad a dicha toma de posesión, deberá haberse dispuesto lo necesario para el pago de la justa compensación por dicha posesión . . . ." Esta disposición no tiene el alcance de impedir la incautación de hecho. Hay casos de excepción en que el Estado ocupa extrajudicialmente la propiedad o se incauta de un derecho real, como el caso de autos, con anterioridad a la presentación de una demanda de expropiación y sin haber consignado una justa compensación. En tales casos el valor de la justa compensación se determina al momento de la incautación de hecho y no al momento de la presentación de la demanda de expropiación.

La incautación de hecho ha sido reconocida en *United States* v. *Dow*, 357 U.S. 17 (1957); *United States* v. *Dickinson*, 331 U.S. 745 (1946); *United States* v. *1060.02 Acres of Land*, 215 F.Supp. 811 (1963); *Rizzo v. State*, 111 N.Y.S.2d 151 (1951); *Meloon Bronze Foundry* v. *State*, 166 N.Y.S.2d 586 (1957). Al respecto en *United States* v. *Dow*, supra, se expresó:

"En términos generales, el Gobierno puede tomar propiedades en el ejercicio del poder de dominio eminente en una de dos formas: puede entrar en la posesión física de la propiedad sin autorización judicial; o puede instituir un procedimiento de expropiación de acuerdo a los estatutos que así lo autorizan. Bajo el primer método—incautación física—no se instituyen procedimientos de expropiación, y el dueño de la propiedad tiene un remedio disponible bajo la Ley Tucker, 28 U.S.C. §§ 1346(a) (2) y 1491, para recobrar una compensación justa. [citas omitidas] Bajo el segundo método, el Gobierno puede proceder bajo

estatutos que requieran el pago de una compensación a ser determinada judicialmente antes de que pueda tomar posesión de la propiedad [citas omitidas] o bajo estatutos que le permitan entrar mediante orden judicial inmediatamente en la posesión antes de que se determine una compensación justa". [citas omitidas]

Aunque en ambas formas de toma de posesión—expropiación bajo la ley y ocupación física—el título de la propiedad sólo pasa al Estado cuando el dueño recibe la compensación [citas omitidas] o cuando la compensación es depositada en el Tribunal de acuerdo a la Ley de Expropiación . . . , la transferencia del título no necesariamente determina la fecha en que ocurrió la toma de posesión. La regla general es que si el Gobierno ha ocupado físicamente la propiedad antes de adquirir el título, es el primer evento el que constituye el acto de toma de posesión (*taking*). Es ese el evento que da margen a reclamar la justa compensación y el que determina la fecha en base a la cual ha de establecerse la valoración del terreno y desde la cual surge la obligación del Gobierno de pagar intereses". (citas omitidas, traducción nuestra.)

█ Es precisamente para estos casos excepcionales de ocupación física o incautación de un derecho real sin previa consignación de una justa compensación que se ha instituido la acción de expropiación inversa. *Heftler International, Inc. v. J. de P.*, 99 D.P.R. 467, 474 (1970) ; Nichols, *op. cit.*, sec. 8.1(2) ; Mandelker, *Inverse Condemnation: The Constitutional Limits of Public Responsibility*, Wis. L. Rev. 1966, pág. 3; Schretoma, *Eminent Domain: Just Compensation When the Condemnor Enters Before Instituting Proceedings*, 75 Dick. L. Rev. 303, 307. Se le llama inversa porque se insta por el dueño de la propiedad contra el Estado para obtener la compensación a que tiene derecho pero los tribunales generalmente le aplican las mismas normas y principios que rigen la acción de expropiación iniciada por el Estado. Schretoma, *supra*, a las págs. 305–307. En ella se litiga la existencia del uso público y la justa compensación en la misma

forma y manera que estas cuestiones se dilucidan en la acción de expropiación forzosa.

En resumen, el mencionado Art. 5(c) no limita la facultad inherente del Estado Libre Asociado de ocupar extrajudicialmente en casos excepcionales, como el de autos, la propiedad o incautarse de un derecho real. Por supuesto, de ordinario la toma de posesión se lleva a efecto al tiempo de la presentación de la demanda y de la consignación del valor estimado de la compensación.

El segundo fundamento de la recurrente es al efecto de que no se efectuó una incautación de hecho porque habiendo la Autoridad entrado a los terrenos en virtud de un permiso otorgado por los anteriores dueños nunca obtuvo la posesión en concepto de dueño.

El planteamiento es confuso. La posesión en concepto de dueño es requisito indispensable para la adquisición del dominio o de un derecho real por el transcurso del tiempo. Arts. 376 y 1842 Código Civil, *supra*. Tiene importancia en relación con la defensa de prescripción, que como ya vimos, fue desestimada por el tribunal de instancia. Pero no tiene relevancia en el contexto de la garantía constitucional de una justa compensación. La garantía se extiende a cualquier situación de hechos en que haya habido una incautación. En el contexto de este caso se puede definir la incautación como cualquier privación o interferencia sustancial en el dominio o el disfrute de una cosa. Thompson, *On Real Property*, Tomo 5A, pág. 679, sec. 2579; Nichols, *op. cit.*, Tomo II, sec. 6.3. Nichols lo define como:

"Cualquier interferencia sustancial con la propiedad que destruya o disminuya su valor, o por la cual el derecho del dueño a usarla o disfrutarla sea sustancialmente menoscabado o destruido." *Id.*

Se recordará que el tribunal de instancia concluyó que cuando Northwestern adquirió los terrenos en el año 1957 y trató de urbanizarlos se encontró con que la Autoridad le re-

clamaba un derecho de servidumbre para pasar sus líneas y que le exigió el pago del costo de la relocalización provisional de las líneas, sin que Northwestern objetase u opusiese reparo alguno. Más aún, a solicitud de la Autoridad, Northwestern incluyó en el Plano de Urbanización las líneas eléctricas, siendo este plano archivado en el Registro de la Propiedad en cumplimiento de la Ley. En la conclusión de hecho número 14 se hizo constar que en la escritura de venta de los solares Northwestern hizo referencia al Plano de Urbanización indicando que el mismo había sido archivado en el Registro de la Propiedad.

La concatenación de todos estos hechos es suficiente para constituir una incautación porque es evidente que constituyen una clara interferencia con el derecho de propiedad de la recurrente y una disminución en el valor de los terrenos.

No es necesario considerar el apuntamiento relativo al pago de los intereses ya que la Autoridad reconoce en su alegato la obligación de pagarlos desde la fecha de incautación.

*Se dictará sentencia confirmando la aquí recurrida.*