Fiol Matta, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
Se trata de una acción de expropiación a la inversa y daños instada el 15 de junio de 1993 contra la Autoridad de Energía Eléctrica (la Autoridad). La parte demandante alegó en su demanda que la Autoridad se incautó en el 1968 de una franja de terreno de su propiedad con una cabida superficial de 3.3630 cuerdas, sin compensarle por dicha ocupación. Además de reclamar compensación por el *1328 terreno incautado ($336,300), la parte demandante reclamó compensación por los daños que dicha ocupación le ocasionó y continúa ocasionándole en el uso de su propiedad. Específicamente, reclama $396,500 por ingresos dejados de percibir al no poder vender la parcela al valor actual del mercado. En su contestación a la demanda y a la demanda posteriormente enmendada con el consentimiento del tribunal, la Autoridad aceptó que en el 1968, en ocasión de llevar a cabo un proyecto de relocalización de líneas eléctricas, ocupó la franja de terreno objeto de la demanda con el fin público de instalar unas torres de transmisión de una línea eléctrica que iba de Palo Seco a Monacillos. Aceptó, además, que nunca llevó a cabo los trámites para la adquisición formal de dicha franja de terreno y que la parte demandante tenía derecho al pago de la justa compensación por el valor del terreno a la fecha de la incautación y al pago de los intereses. No obstante, negó que los dueños del terreno tuvieran algún derecho a reclamar daños adicionales y, por falta de información, negó también que la franja de terreno ocupada tuviera una cabida de 3.3630 cuerdas y que el valor en el mercado de dicho terreno fuere el de $45.00 por metro cuadrados, o la cantidad total de $396,500, que alegó la parte demandante.
A esos efectos, el 9 de mayo de 1994, la Autoridad presentó una moción para desestimar la reclamación de daños y pérdida de ganancias alegados por la parte demandante y solicitó que se continuara la acción de expropiación a la inversa únicamente en cuanto al pago de la justa compensación. En su moción alegó que la acción de daños de la demandante no procedía porque, además de estar prescrita, la jurisprudencia local ha determinado que los demandantes en una acción de expropiación a la inversa sólo tienen derecho a la justa compensación que contempla la Quinta Enmienda de la Constitución Federal y las secciones 7 y 9 del Artículo II de la Constitución del Estado Libre Asociado.
Para sustentar su alegación de que la acción estaba prescrita, la Autoridad señaló en su moción que la incautación física del terreno ocurrió en el 1968 y que no fue hasta el 18 de febrero de 1986 cuando los demandantes realizaron la primera gestión afirmativa señalando la existencia de la ocupación a la Autoridad. Esta consistió en una carta que los demandantes dirigieron al Director Ejecutivo de la Autoridad en la que le informaron que no se habían enterado de la incautación hasta el 1984, cuando un ingeniero realizó una mensura de su finca. Según la Autoridad, ya en esos momentos había transcurrido el término prescriptivo de un año dispuesto por el Art. 1868 del Código Civil para instar la acción de daños que contempla el Art. 1802 de dicho cuerpo de ley, 31 L.P.R.A. 5298.
Con relación a su contención de que la acción de daños no procedía, la Autoridad informó en su moción desestimatoria que el 22 de febrero de 1986, los demandantes vendieron a Levitt Homes la finca principal de 72.057 cuerdas por la cantidad de $2,382,569.89, quedándose con el remanente de 3.3630 cuerdas ocupado por la Autoridad. Según la Autoridad, dicha venta es indicativa de que no empece la ocupación, "la finca principal... no sufrió menoscabo o afectación de clase alguna" por lo que, como cuestión de derecho, los demandantes sólo son acreedores a una justa compensación por el valor del mencionado remanente a la fecha de la incautación. Señaló, además, que "el Tribunal Supremo de Puerto Rico nunca ha concedido daños en relación con procedimientos de expropiación a la inversa salvo la justa compensación que la ley y las-garantías constitucionales dispone". Según explicó, en estos casos de expropiación a la inversa, de existir algún daño, "el mismo está comprendido dentro de la justa compensación a pagarse por el valor del terreno; ya que al hacer la valoración del terreno se toman en consideración, además del valor del terreno en el mercado, los daños por razón de la incautación, de ser probados éstos en efecto...". A esos efectos, la Autoridad cita al tratadista Nichols, Nichols on Eminent Domain, sección 8.06, página 8-101:

"The phrase "just compensation" means the value of the land and the damage, if any, to land not taken. It does not imply more than this. The words "compensation" and damages" are, for most purposes, considered synonymous." 

La parte demandante se opuso a la desestimación solicitada por la Autoridad y solicitó, a su vez, que se dictara sentencia a su favor por las alegaciones. Basó esencialmente su oposición a las pretensiones de la Autoridad en dos argumentos:

Que la Autoridad está impedida por sus propios actos de levantar la defensa de prescripción porque en su contestación a la demanda y a la demanda enmendada admitió la existencia de daños 
*1329
continuos y la acción basada en este tipo de daños no está prescrita.

— Que la Autoridad renunció a la defensa afirmativa de prescripción extintiva porque no levantó la misma en la primera alegación responsiva."
El 24 de octubre de 1994, el tribunal de instancia emitió una resolución en la que señaló una vista para el 29 de marzo de 1995, para "discutir la alegación de prescripción a la luz de José Velázquez v. E.L.A., 94 JTS 9, y la procedencia de daños". Dispuso, además, que había controversia en torno al "valor que tiene el terreno de los demandantes .incautado-por la parte demandada y si proceden daños a favor de la parte demandante por la actuación de la parte demandada".
La vista en tomo a las mociones de desestimación se celebró el día indicado. Escuchada la prueba y los argumentos de cada parte, el tribunal se reservó el falló y señaló conferencia con antelación al juicio para el 28 de agosto de 1995. No obstante, el 19 de abril de 1995, antes de celebrarse dicha conferencia, emitió la sentencia apelada que declaró con lugar la moción de desestimación presentada por la Autoridad y ordenó la desestimación y el archivo de la demanda. 
En la sentencia, la jueza de instancia expresó que la Autoridad se amparó en el caso de Velázquez v. E.L.A. ante, para alegar la prescripción y que la demandante, por su parte, alegó que el término prescriptivo no había empezado a correr porque la propiedad no se había liberado y el daño ocasionado era continuo. Según la prueba recibida, reseñó como incontrovertidos los siguientes hechos: que la parte demandante es dueña en pleno dominio de la referida parcela; que la Autoridad se incautó del terreno para pasar sus líneas eléctricas sin haber adquirido un derecho de servidumbre; que el 18 de febrero de 1986 los demandantes le escribieron carta a la Autoridad sobre la parcela afectada y en la misma admitieron que en septiembre de 1984 se habían enterado de que la Autoridad había afectado su terreno; que el 5 de mayo de 1986 la Autoridad le envió una carta a los demandantes en la que les informó que habían iniciado una investigación y que le informarían sobre el resultado de la misma; que la Autoridad nunca volvió a comunicarse con los demandantes; que la demanda se radicó el 15 de junio de 1993.
El tribunal apelado concluyó, como cuestión de derecho, que el Estado viene obligado a pagar una justa compensación cuando se incauta físicamente de una propiedad. Culebra Enterprises Corp v. Estado Libre Asociado, 91 J.T.S. 18. En ese caso, el término prescriptivo para iniciar la acción, según lo determinó el Tribunal Supremo en Velázquez v. E.L.A., supra, es el de un (1) año establecido en el Art. 1868 del Código Civil. Dicho término comienza a discurrir desde la fecha en que se conoce de la incautación física.
De acuerdo con las determinaciones de hechos y conclusiones de derecho anteriormente resumidas, el tribunal de instancia determinó que la acción de expropiación a la inversa había prescrito porque la parte demandante conocía de la incautación física de su propiedad desde el 1984. Además, resolvió que aun cuando se hubiese interrumpido el término prescriptivo con la reclamación extrajudicial que efectuó la parte demandante en el 1986, la demanda no fue incoada hasta el 1993, siete años después, por lo que, aún así, estaba prescrita. 
Habiéndose denegado la reconsideración de la sentencia reseñada, la parte demandante apela alegando que el tribunal apelado erró: (1) al permitir un planteamiento de prescripción a través de una moción de desestimación cuando dicha defensa afirmativa no fue alegada en la primera alegación responsiva; (2) al determinar que la acción [de daños] estaba prescrita y (3) al determinar que bajo las particulares circunstancias del caso, el término prescriptivo para instar la acción es el de un año.
Examinado el expediente apelativo y el derecho aplicable, resolvemos que ésta es una acción de expropiación a la inversa en su modalidad de incautación física de la propiedad; que no procedía desestimar la acción para obtener la compensación correspondiente porque la Autoridad renunció a la defensa de prescripción contra la acción de expropiación a la inversa al aceptar, en su contestación a la demanda y a la demanda enmendada, las alegaciones referentes a la incautación física y a la obligación de pagar una justa compensación a los demandantes; y que en una acción de expropiación a la inversa por la incautación física de una propiedad sólo procede conceder una "justa compensación" la que, según la jurisprudencia ha determinado, consiste del valor del terreno a la *1330 fecha de la incautación y los intereses que dicha cantidad hubiese producido hasta el momento del pago. Por ello, procede revocar la sentencia apelada en tanto declaró prescrita la acción de expropiación a la inversa, confirmar la desestimación de la reclamación por daños y devolver el caso al tribunal de instancia para que continúen los procedimientos tendientes a establecer el valor justo en el mercado que tenía la franja de terreno objeto de la acción de expropiación a la inversa al momento de la ocupación.
Surge de los autos en apelación que la Autoridad no levantó la defensa de prescripción con relación a la acción de expropiación a la inversa ni en su contestación a la demanda o a la demanda enmendada, ni en su moción para desestimar, la cual estaba dirigida únicamente a solicitar la desestimación de la acción por los daños incidentales a la incautación. Por el contrario, en la moción de desestimación, la Autoridad expone que: "El análisis integral de las disposiciones sustantivas, así como de la vasta jurisprudencia interpretativa... claramente nos demuestra que ".. la parte demandante ostenta un legítimo derecho a percibir una justa compensación...." Más adelante expresa que: "Corresponde ... determinar el valor de la porción de terreno ocupada para [sicj las líneas de la Autoridad desde la fecha de incautación para fijar una justa compensación al dueño de la propiedad." Tras refutar el que proceda alguna compensación en daños, además de la justa compensación, la Autoridad señala que "... como parte de la justa compensación a la cual los . demandantes tienen derecho constitucionalmente se incluye el pago de intereses, en. adición al valor justo de la propiedad". Explica que en el caso de autos se computarían los intereses desde el momento de la ocupación física, puesto que el Estado nunca consignó cantidad alguna en compensación por la ocupación. 
Fue el tribunal de instancia quien, en forma indirecta, levantó la posibilidad de la prescripción de la acción de expropiación a la inversa por la ocupación física de la propiedad, al requerirle a las partes que discutieran la alegación de prescripción contenida en la moción de desestimación, a la luz de José [sic] Velázquez v. E.L.A., 94 JTS 9 Así lo expone la parte apelante en su recurso, al argumentar que esta actuación del tribunal de instancia "tuvo el efecto de levantar la defensa afirmativa de prescripción [de la acción de expropiación a la inversa... cuando ya la misma se entendía renunciada y el Tribunal motu proprio no podía levantarla". Reclama, apoyándose en la Regla 6.3 de Procedimiento Civil, que la defensa de prescripción hay que levantarla al hacer "la primera alegación respondiente" y que de no hacerse así, se renuncia. 
Nuestro sistema de derecho procesal es uno rogado y de carácter adversativo. Por ello, cuando una defensa afirmativa, como lo es la prescripción de la acción, no se levanta a tiempo, se entiende renunciada. Reglas 6.3 y 10.2 de Procedimiento Civil, 32 L.P.R.A. Ap.III; Cuevas Segarra, Práctica Procesal Puertorriqueña, Vol. II, Publicaciones J.T.S. 1979, páginas 63-65; Olmeda Nazario v. Sueiro Jiménez, 123 D.P.R. 294 (1989). Véase, además, Federación de Pescadores de Playa Picúas Inc. v. U. S. Industries Inc., 94 J.T.S. 26, n. 5, página 11601, opinión concurrente y disidente de la Juez Asociada Naveira de Rodón y Ortiz Díaz v. R. & R. Motor Sales Corp., 92 J.T.S. 140, página 10041-10042, opinión concurrente del Juez Negrón' García: "[A]l amparo de la Regla 6.3 de Procedimiento Civil toda 'materia constitutiva de excusa o de defensa afirmativa, —incluso la prescripción-- debe ser oportuna y afirmativamente formulada mediante alegación responsiva; de lo contrario se renuncia." Odriozola v. S. Cosmetic Dist. Corp., 116 D.P.R. 485, 506 (1985)."
En el caso de autos, la demanda fue enmendada con permiso del tribunal, por lo que la parte demandada tuvo dos oportunidades para plantear la defensa de prescripción, tanto contra la acción de expropiación a la inversa por ocupación física como contra la acción por daños incidentales a la incautación física. El Tribunal Supremo emitió su decisión en el caso de Velázquez v. E.L.A., ante, el 1 de febrero de 1994, después de presentada la contestación a la demanda, pero antes de la presentación de la moción de desestimación. Por eso, aún cuando la Autoridad pudiese argumentar que al momento de presentar su alegación responsiva a la demanda enmendada, el 7 de diciembre de 1993, no se había determinado que el término prescriptivo de la acción de expropiación a la inversa por incautación física de la propiedad era el de un año, sí se conocía esa doctrina para el 25 de marzo de 1994, fecha en que solicitó permiso al tribunal para presentar una moción de desestimación, y ciertamente, para el 9 de mayo de 1994 cuando efectivamente la presenta. La Autoridad tuvo pues, una tercera oportunidad para presentar la defensa de prescripción contra la acción de expropiación a la inversa. Sin embargo, no hace referencia alguna al caso de Velázquez, ni a su doctrina, en ninguna de las *1331 oportunidades que tiene para ello luego de presentar su contestación. Por el contrario, como hemos visto, reconoce y afirma el derecho de la parte demandante a recibir justa compensación por la incautación de su propiedad.
Según los hechos procesales anteriormente reseñados, la Autoridad aceptó, en todas sus alegaciones responsivas, que se incautó de la propiedad del demandante y reconoció el derecho constitucional de éste a recibir una compensación justa. Asimismo, aceptó su obligación de pagarle el valor del terreno a la fecha de la ocupación física, con sus intereses. Habiendo renunciado la parte demandada a levantar la defensa afirmativa de prescripción contra la acción principal, no le era permitido al tribunal hacerlo, ni desestimar la acción por este fundamento: "[LJa prescripción admite causas de suspensión y de interrupción... funciona siempre como excepción y sólo el demandado y no el juez puede hacerla valer en juicio...". Cuevas Segarra, José A., Práctica Procesal Puertorriqueña, Procedimiento Civil, Publicaciones J.T.S., 1983, páginas 8 y 9.
Lo expuesto no dispone del presente caso ya que el segundo señalamiento de error nos requiere examinar si estaba prescrita la acción de daños cuya desestimación solicitó la Autoridad y, de no estarlo, si la misma procedía en derecho. Ya hemos visto que la Autoridad tampoco adujo la defensa de prescripción contra la acción de daños en su contestación a la demanda y a la demanda enmendada. Dicha defensa de prescripción contra la acción por daños aparece por primera vez en una conferencia con antelación al juicio que se celebró el 25 de marzo de 1994, en la que la Autoridad solicitó un término para presentar, "una moción de desestimación o sentencia sumaria con un memorando de derecho". El tribunal le concedió 30 días a dicha parte para someter la moción de desestimación a esos efectos, a pesar de que la parte demandante objetó por tardía la defensa de prescripción.
La Autoridad presentó su moción el 9 de mayo de 1994. En la misma alegó que la acción de daños presentada al amparo del Artículo 1802 del Código Civil, estaba prescrita; que no procedía dicha reclamación en acciones sobre expropiación a la inversa y que, además, en este caso no hubo daño alguno por razón de la incautación, ya que el 22 de febrero de 1986 los demandantes vendieron la finca remanente de 72.057 cuerdas a Levitt Homes, por la cantidad de $2,382,569.80. Según la Autoridad, esto demuestra que no empece la ocupación de una pequeña franja de la finca, ésta no sufrió menoscabo alguno.
Debemos, por tanto, examinar la naturaleza jurídica de la acción de expropiación a la inversa y el remedio que pueden disponer los tribunales cuando ésta proceda, para determinar si dicho remedio abarca los daños reclamados por el demandante. De no ser así, procedería desestimar la acción en daños por esta causa, sin necesidad de determinar si se levantó tardíamente la defensa de prescripción.
La acción del Estado, en este caso la Autoridad de Energía Eléctrica, de incautarse físicamente de la propiedad de los demandantes constituyó una ocupación o confiscación de propiedad privada porque se llevó a cabo sin iniciar previamente una acción de expropiación forzosa y sin pagar justa compensación. Según señala el Tribunal en E.L.A. v. Northwestern Const., Inc., 103 D.P.R. 377, 383 (1975), es precisamente para estos casos excepcionales de ocupación física o incautación de un derecho real sin previa consignación de una justa compensación que se ha instituido en Puerto Rico la acción de expropiación a la inversa. Heftler Int, Inc. v. Junta de Planificación, 99 D.P.R. 467 (1970). Se le llama "inversa" a esta acción porque, en vez de iniciarse un procedimiento de expropiación por el Estado, es el dueño de la propiedad quien le requiere al Estado la compensación a que tiene derecho. Este derecho, claro está, tiene raíces constitucionales en el derecho fundamental al disfrute de la propiedad y en la limitación constitucional a la dedicación de propiedad privada para uso público. 
Los tribunales generalmente le aplican a la acción de expropiación a la inversa las mismas normas y principios que rigen la acción de expropiación iniciada por el Estado. E.L.A. v. Northwestern, ante, página 383. La razón para ello estriba precisamente en que la acción surge cuando el Estado toma o se incauta de la propiedad privada:

"El precepto constitucional que da base al ejercicio de esta acción prohíbe que se tome o se perjudique la propiedad para uso público sin una justa compensación. La compensación a pagarse ha de depender, por tanto, de si ha habido una toma de la propiedad, o un perjuicio a la propiedad, o 
*1332
ambas cosas. Si la intervención del Estado o de su agencia o corporación pública que da margen al ejercicio de la expropiación inversa equivale a una toma de la propiedad, la compensación debe determinarse a base de su valor en el mercado en el momento en que la autoridad expropiante ocupa la propiedad. Planta de Cal Hicaco v. Tribunal Superior, 103 D.P.R. 385, 387 (1975); E.L.A. v Northwestern Const., Inc., 103 D.P.R. 377, 282 (1975). En este supuesto y para fines de la compensación el efecto de la expropiación inversa es como si se tratara de una expropiación directa.

La compensación correspondiente a perjuicios a la propiedad ha de determinarse, cuando no ha habido una toma de la misma, a base de su depreciación, es decir, la diferencia en su valor como consecuencia del perjuicio". Olivero v. Northwestern, supra, página 314 (opinión disidente del Juez Asociado Irizarry Yunqué).
El Tribunal recoge este razonamiento en Pamel Corporation v. E.L.A., 89 J.T.S. 101, página 7244, al señalar que "puede proceder una acción de daños por la incautación temporera " (énfasis nuestro) pero no así cuando la incautación equivale a la expropiación. Por tanto, la compensación justa en casos de expropiación a la inversa, al igual que en los casos ordinarios de expropiación forzosa, se determina a base del valor de la propiedad en el mercado a la fecha en que el Estado la ocupa. 32 L.P.R.A. see. 2915; Pamel Corporation v. E.L.A., supra; Olivero v. Autoridad de Carreteras, supra; Planta de Cal Hicaco v. Tribunal Superior, supra; E.L.A. v. Northwestern, supra; E.L.A. v. Fonalledas Córdova, 84 D.P.R. 573 (1962). Además, la ley provee, para ambos casos, que se abonen al propietario los intereses sobre la cantidad que el tribunal finalmente determine que es el justo valor de la propiedad. En una acción de expropiación a la inversa éstos serían "computados desde la fecha en que fue efectiva la incautación de la propiedad, es decir, la fecha en que ocurrió la perturbación equivalente a una toma de facto de la propiedad, hasta la fecha en que se efectúe el pago". 32 L.P.R.A. 2907; Olivero v. Northwestern, supra, opinión disidente del Juez Asociado Irizarry Yunqué, página 318. 
En lo que se refiere a la indemnización por daños como resultado de la incautación de una propiedad, la regla general en Puerto Rico es que éstos incluyen tan sólo los sufridos por la propiedad expropiada en ausencia de circunstancias extraordinarias. Señala el Tribunal en Olivero v. Autoridad 'de Carreteras, supra, a la página 306, que "[e]sto es así porque un recurso de expropiación es un procedimiento in rem" y "[d]e lo contrario habría una duplicación de compensaciones en lo que se refiere al gobierno". El Tribunal distingue entre nuestra jurisdicción y algunas jurisdicciones estatales estadounidenses que permiten compensación por daños, además del justo valor de la propiedad. La base para ello, señala, es que en esas jurisdicciones estatales, "contrario a Puerto Rico, la Constitución requiere la previa consignación de la justa compensación en casos de expropiación. La violación de dicha disposición constitucional en las jurisdicciones donde existe, justifica daños en adición al justo valor de la propiedad". Olivero v. Autoridad de Carreteras, supra, página 306, n. 3. Enfasis nuestro. 
Siguiendo este razonamiento, en E.L.A. v. Fonalledas Córdova, supra, se reconoció el derecho a la compensación por la depreciación del valor del remanente de una finca como resultado de la expropiación de una porción de la misma. Asimismo, se reconoció el derecho a compensación por el costo de remoción de maquinaria adherida al inmueble expropiado, Pueblo v. Soc. Agric. Mario Mercado e Hijos, 72 D.P.R. 792 (1951). También se ha resuelto que "el estado no tiene que pagar por 'las oportunidades que el dueño pueda perder como resultado de la expropiación', ni por 'costos de mudanza o por la pérdida de negocios- mientras se muda', ni por 'pérdidas futuras' o la 'pérdida de la plusvalía (good-will) proveniente de la ubicación de la propiedad'. [Pueblo v.] McCormick,... 178 D.P.R. 939 (1956)]; Olivero v. Autoridad, 107 D.P.R. 301, 307 (1978);... E.L.A. v. Baldrich, 79 D.P.R. 680, 686-87 (1956)". Administración de Terrenos v. Nerashford Dev. Corp., 94 J.T.S. 113, página 82, énfasis nuestro 
De acuerdo con el Art. 2 de la Ley Núm. 479 de 26 de abril de 1946, incorporado a la Ley General de Expropiación Forzosa, la indemnización por la expropiación forzosa de una propiedad particular para fines de utilidad pública o beneficio social, "deberá basarse en el valor razonable en el mercado de tal propiedad sin incluir incremento alguno por razón de expectativa fundada y razonable...". 32 L.P.R.A. 2915. El término valor en el mercado se ha definido como "el precio que un comprador en una venta no forzada estaría dispuesto a pagar y aquel [sic] en que un vendedor, en las mismas *1333 circunstancias, estaría dispuesto a vender, consideradas las condiciones en que se halle el terreno en la fecha de la expropiación, y el uso más productivo a que el dueño pudiere 'dedicarlo dentro de un futuro razonable cercano'. Pueblo v. Huyke, 70 D.P.R. 754, 757 (1950)". Administración de Terrenos v. Nerashford Dev. Corp. supra, página 82. En la determinación de dicho valor se considera la finca como si estuviera libre de cargas reales o gravámenes. Los tribunales federales han adoptado este método (el valor en el mercado de la finca, sin tomar en consideración las cargas reales o gravámenes que afecten la finca) para determinar la justa compensación que tiene que pagar el Estado por el título de dominio de una finca. En Administración de Terrenos v. Nerashford, supra, el Tribunal lo adoptó expresamente y reconoció que es consistente con sus pronunciamientos previos, así como "la manera más generalizada, sencilla y lógica de determinar qué compensación es justa...". Administración de Terrenos, supra, página 81.
En el caso de epígrafe, la parte demandante reclamó compensación adicional a la justa compensación determinada por el valor del terreno al momento de la incautación por la Autoridad. Específicamente reclamó $396,500 por concepto de ingresos dejados de recibir al no poder vender el terreno al valor actual del mercado. Según la jurisprudencia y las disposiciones legales anteriormente citadas, la concesión de esta compensación adicional no procede en estos casos de expropiación a la inversa como tampoco en aquellos de expropiación directa. Por ello, procedía desestimar esta acción de daños, según lo requirió la Autoridad en su moción de desestimación.
Habiendo concluido que no procedía desestimar la acción de expropiación a la inversa por prescripción, no es necesario examinar el tercer error señalado. De igual forma, como hemos resuelto que no procedía en derecho la acción por los daños adicionales, no es necesario determinar si dicha acción había prescrito. Por ello, se revoca la sentencia apelada y se devuelve el caso para que continúen los procedimientos basados en la alegación de expropiación a la inversa, únicamente con respecto a la determinación de la justa compensación a la que tiene derecho la parte demandante-apelada.
Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.
María de la C. González Cruz
Secretaria General
ESCOLIOS 96 DTA 5
1. Apéndice a la Apelación, Exhibit VIH, página 24.
2. Moción de Desestimación, apéndice a la Apelación, páginas 22-23.
3. La Autoridad también cita los siguientes casos: Olivero v. Autoridad de Carreteras, 107 D.P.R. 301 (1978); ELA v. Northwestern Const., 103 D.P.R. 377 (1975); Planta de Cal Hicaco v. Tribunal Superior, 103 D.P.R. 385 (1975); Asociación de Pescadores de Vieques Inc. v. Manuela Santiago. 747 Fed. Supp. 134 (1990); Culebra Enterprises Corp. v. Miguel A. Rivera, 813 F. Rptr. 2d 506 (1987).)
4. Apéndice a la Apelación, página 61.
5. Id., páginas 78-81.
6. 31 L.P.R.A. 5298:

"Prescriben por el transcurso de un (1) año:

(1) La acción para recobrar o retener la posesión.

(2) La acción para exigir la responsabilidad civil por injuria o calumnia, y por las obligaciones derivadas de la culpa o negligencia de que se trata en la see. 5141 de este título desde que lo supo el agraviado."

*1334 7. Sentencia de 19 de abril de 1995, página 4, apéndice a la Apelación, página 81.
8. Moción de Desestimación, página 1.
9. Id., página 5.
10. Id., página 10.
11. Véase "Resolución y Orden", página 61 del apéndice a la Apelación.
12. Apelación, página 6.
13. Id., página 5.
14. Véase Minuta, Exhibit 6, apéndice a la Apelación, páginas 12-13.
15. 31 L.P.R.A. see. 5141.
16. La Autoridad en este caso es "un cuerpo corporativo y político que constituye] una corporación pública e instrumentalidad gubernamental autónoma del Estado Libre Asociado" —22 L.P.R.A. sec. 193— con poder para "adquirir, en cualquier forma legal, incluyendo sin limitación, adquisición por compra bien sea por convenio o mediante el ejercicio del poder de expropiación forzosa...", 22 L.P.R.A. see. 196 (h).
17. En su opinión disidente en Olivero v. Autoridad de Carreteras, 107 D.P.R. 301, 313 (1978), el Juez Asociado Irizarry Yunqué explica que procede la acción de expropiación a la inversa cuando concurren los siguientes requisitos:

"(I) la realización de una obra pública conforme a planes adoptados por el Estado o por una agencia del Estado que tenga el poder de instar la acción de expropiación forzosa; la invasión física de una propiedad privada o de los derechos o intereses sobre ella durante la realización de la obra pública o como consecuencia de la misma; y , (3) que dicha invasión sea de tal naturaleza que equivalga a una toma de la propiedad, o la perjudique de tal manera que equivalga a una privación sustancial o permanente de su uso y disfrute."

18 . "Se reconoce como derecho fundamental del ser humano el derecho a la vida, a la libertad y al disfrute de la propiedad... Ninguna persona será privada de su libertad o propiedad sin debido proceso de ley....," Constitución del Estado Libre Asociado de Puerto Rico, Art. II, Sec. 7.
19. "No se tomará o perjudicará la propiedad privada para uso público a no ser mediante el pago de una justa compensación y de acuerdo con la forma provista por ley." Constitución del Estado Libre Asociado de Puerto Rico, Art. II, See. 9.
20. Estos están contenidos en la Ley General de Expropiación Forzosa, Ley de 12 de marzo de 1903, 32 L.P.R.A. sees. 2901-2927 y en las Reglas 58.1 a 58.9 de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R.58.1 a 58.9.
21. "Cuando el procedimiento es de expropiación, los intereses se computan sobre la diferencia entre la cantidad consignada al instarse la acción por el Estado o la agencia expropiante y la cantidad que el tribunal finalmente determine como justa compensación. 32 L.P.R.A. 2907. La tasa de interés a pagarse es aquella dispuesta en el Reglamento 78-1 publicado por la Oficina del Comisionado de Instituciones Financieras". E.L.A. v. Rexco Industries. Inc., 94 J.T.S. 151.
22. Específicamente se refiere el Tribunal a un caso de la jurisdicción de Montana, en el que se resolvió que el propietario tenía derecho a compensación "for violation of his constitutional right to be free from unlawful trespasses...". Véase Nichols, Law of Eminent Domain, Vol. HI, §8-01[4][c], pág. 65 (Revised 3rd Edition, *1335 1993). Sin embargo, en otros estados, como el de Pennsylvania, se ha resuelto que la compensación por expropiación a la inversa sólo incluye la diferencia entre el valor justo en el mercado de la propiedad remanente antes y después de la incautación. Commonwealth Dept. of Trarsp. v. Greenfield Township Property Owners, 582 A.2d 41 (Pa. Commw.Ct.1990); Nichols, supra, suplemento de 1993.
23. Sin embargo, la ley expresamente contempla la compensación por daños a los antiguos dueños de la propiedad en aquellos casos en que el estado desista total o parcialmente de su adquisición. 32 L.P.R.A. 2910.
24. Se trata del método denominado "undivided fee rule". Véase Nichols, Law of Eminent Domain, 3ra ed. revisada, 1994, Vol. 4, 512.05 [1], páginas 12-108 a 12-111 y los casos allí citados.
25. Conviene señalar que los demandantes-recurrentes pudieron reclamar su derecho a una justa compensación por lo menos desde el 1984, cuando se enteraron de la ocupación. No lo hicieron. Su falta de diligencia no puede ser base para reclamar daños por razón de que no puedan vender su propiedad al valor actual en el mercado: "Ocupada físicamente una propiedad:por el Estado- —incautación de hecho-- sin-previa consignación de una justa compensación, el dueño de la propiedad puede inmediatamente ejercitar la acción de expropiación a la inversa en protección de su derecho a una compensación justa". Planta de Cal Hicaco v. Tribunal Superior, supra, a la página 388 (1975).
26. "Erró el Honorable Tribunal apelado al determinar que, bajo las particulares circunstancias de este caso, el término prescriptivo para instar la acción es de un año." Apelación, página 8.