# 98 DTA 223

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL II DE BAYAMON
PANEL SUSTITUTO**

FELIX JOSE Y MARITZA JIMENEZ SOTO
Apelantes

v.

AUTORIDAD DE ENERGIA ELECTRICA
Apelados

Núm. KLAN-97-01223

San Juan, Puerto Rico, a 24 de agosto de 1998

Panel sustituto integrado por su Presidenta, Juez Rivera de Martínez
y los Jueces Rivera Pérez y Soler Aquino

Rivera de Martínez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La parte demandante-apelante, compuesta por Maritza y Félix José Jiménez Soto, solicita la revisión de la sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, el 22 de agosto de 1997, notificada el 25 de septiembre de 1997. Mediante la misma, dicho foro dispuso que la justa compensación a la que tenían derecho los demandantes en un caso de expropiación forzosa era de sesenta y tres mil ($63,000) dólares y fijó en ciento dieciocho mil veinte ($118,020) dólares la partida de los intereses devengados, la cual fue computada desde el año 1968 hasta agosto de 1997, mes en que se dictó la sentencia.

Una adecuada comprensión del asunto ante nuestra consideración requiere que expongamos brevemente el trasfondo fáctico y procesal que origina el recurso instado.

### I

El 15 de junio de 1993 la parte demandante instó acción de expropiación a la inversa y daños ante el Tribunal de Primera Instancia, Sala de Bayamón. Alegó ser dueña de una parcela con una cabida de tres punto tres mil seiscientas treinta (3.3630) cuerdas, ubicada en el Barrio Palmas de Cataño, la cual había sido alegadamente incautada por la Autoridad de Energía Eléctrica, en adelante A.E.E., para pasar sus líneas eléctricas sin haber adquirido un derecho de servidumbre.

Adujo que le informó sobre ello a la A.E.E. mediante carta de 18 de febrero de 1986 y que dicha agencia indicó que ordenaría una investigación. A la fecha en que se instó la demanda, alegadamente la A.E.E. no se había vuelto a comunicar.

Arguyendo que los demandados le invadieron físicamente su propiedad privándole del disfrute de la misma sin el debido proceso de ley y que le ocasionaron daños, los demandantes solicitaron trescientos treinta y seis mil trescientos ($336,300) dólares como justa compensación.

La AEE contestó la demanda el 14 de septiembre de 1993, aceptando en términos generales las alegaciones de la misma, con excepción del alcance y la cuantía de los daños alegados. El 7 de diciembre de 1993 la parte demandante presentó una demanda enmendada mediante la cual planteó que la invasión física de la propiedad por parte de los demandados le privó de todo uso de la propiedad, incluyendo el uso residencial. Aduciendo que los terrenos tenían una clasificación R-3 y un valor en el mercado de cincuenta y cuatro ($54) dólares por metro cuadrado, sostuvo que de venderse los terrenos para fines residenciales los mismos arrojarían un valor de trescientos noventa y seis mil quinientos ($396,500) dólares. Esta ganancia, alegó, se veía frustrada por los daños ocasionados por la parte demandada.

En consideración a sus alegaciones solicitó del tribunal que hiciese una determinación judicial de incautación y ordenase a la demandada a pagar la justa compensación, los daños pasados, presentes y futuros, así como costas, gastos y honorarios de abogado.

Por su parte, la demandada contestó alegando que la compensación total a pagarse por el Estado es el valor del terreno al momento de la incautación y los intereses desde dicha fecha.

En atención a una moción de desestimación presentada el 10 de mayo de 1994, la respectiva réplica y una solicitud para que se dictase sentencia por las alegaciones, de fecha 10 de junio de 1994, el tribunal de instancia emitió resolución el 24 de octubre de 1994, notificada el 9 de noviembre de 1994, señalando una vista para dilucidar dichos asuntos.

No obstante, determinó que no existía controversia en cuanto al hecho de que la parte demandada se incautó de una porción de la parcela propiedad de los demandantes para pasar sus líneas eléctricas sin haber adquirido un derecho de servidumbre; que el valor de la propiedad en el mercado era de ciento cuarenta y cinco ($145) dólares por metro cuadrado, que el valor de los terrenos en ese momento era de trescientos noventa y seis mil quinientos ($396,500) dólares y que los derechos de la parte demandante habían sido lesionados. Por otro lado, determinó que existía controversia en cuanto al valor que tenía el terreno de los demandantes incautado por la parte demandada y sobre si procedían daños a favor de la parte demandante por la actuación de la parte demandada.

En la vista celebrada el 21 de agosto de 1997 el tribunal estableció la justa compensación en sesenta y tres mil ($63,000) dólares. ▮Los intereses, computados desde 1968 hasta agosto de 1997, fueron fijados en ciento dieciocho mil veinte ($118,020) dólares conforme a lo dispuesto en el caso de *Estado Libre Asociado v. REXCO*, **94 J.T.S. 151**, opinión de 6 de diciembre de 1994, y de acuerdo con los intereses fijados por la Oficina del Comisionado de Instituciones Financieras. Estas determinaciones fueron recogidas en sentencia emitida el 22 de agosto de 1997, notificada el 25 de septiembre de 1997.

En octubre de 1997, la parte demandante presentó una moción solicitando enmiendas, determinaciones de hechos y conclusiones de derecho adicionales. La misma fue declarada sin lugar mediante resolución de 8 de octubre de 1997, notificada el 14 del mismo mes y año.

Inconforme, acude ante nos la parte demandante alegando que fue cometido el siguiente error:

*"Cometió error de derecho el Honorable Tribunal de Primera Instancia al violar el derecho constitucional del apelante a una justa compensación por la invasión física de su propiedad por la A.E.E. desde enero de 1968."*

Sostiene la parte apelante que los intereses no fueron computados conforme a derecho y, además, que merece recobrar una partida por concepto de arrendamiento por el uso de la propiedad con anticipación a la adquisición del título de la misma.

La parte demandada se opuso al recurso el 6 de abril de 1997, por lo que contando con el beneficio de la posición de ambas partes estamos en condiciones de resolver.

## II

El Artículo II Sec. 7 de la Constitución del Estado Libre Asociado de Puerto Rico reconoce como derecho fundamental del ser humano el derecho al disfrute de la propiedad. ▮ Sin embargo, no siendo éste un derecho absoluto, la Asamblea Legislativa puede restringir el derecho de propiedad en beneficio del bienestar general. *Velázquez v. Estado Libre Asociado*, ___ D.P.R. ___ (1994), **94 J.T.S. 9**, opinión de 1 de febrero de 1994.

El principio de rango constitucional enunciativo de que no se tomará o perjudicará la propiedad privada para uso público a no ser mediante el pago de una justa compensación y de acuerdo con la forma provista por ley, ▮ origina el poder de expropiación del Estado. Conforme a ello, el soberano tendrá autoridad para desposeer de una cosa a su propietario para destinarla a un fin público. No obstante, dicha autoridad estará supeditada a que la cosa sea para un fin público y se pague una justa compensación. *Culebra v. Estado Libre Asociado*, 127 D.P.R. 943 (1991).

La obligación del Estado de pagar justa compensación puede manifestarse de tres formas: (1) mediante el ejercicio directo del poder de dominio eminente, instando un recurso de expropiación; (2)

por medio de su reglamentación, y (3) cuando ocurre una incautación de hecho al afectar sustancialmente el uso de la propiedad físicamente. *Velázquez v. Estado Libre Asociado, supra.*

La acción de expropiación a la inversa se ha instituido para casos como el de la incautación de hecho, donde se ha efectuado una ocupación física o incautación de un derecho real sin previa consignación de una justa compensación. Se denomina *"inversa"* porque quien la insta es el dueño de la propiedad contra el Gobierno. *Estado Libre Asociado v. Northwestern,* 103 D.P.R. 377 (1975).

Aún así, por lo general, los tribunales le aplican las mismas normas y principios que rigen la acción de expropiación iniciada por el Estado. *Estado Libre Asociado v. Northwestern, supra.* Conforme a ello, el Estado tiene la obligación de pagar justa compensación cuando ocurre una incautación física de la propiedad. *Hamptom v. Estado Libre Asociado,* ___ D.P.R. ___ (1996), **96 J.T.S. 4**, opinión de 18 de enero de 1996.

El valor de la propiedad, y la compensación que debe pagar el Estado se determina al momento de la incautación de hecho. Ese acto de toma de posesión (*taking*) es además el momento a partir del cual se computa el pago de intereses. Sin embargo, la toma de posesión no le confiere al Estado título de propiedad; éste pasa al adquirente cuando el dueño recibe la compensación. *Estado Libre Asociado v. Northwestern, supra.*

Por otro lado, debe quedar claro que el Gobierno sólo compensará por la parte de la propiedad que necesite o ha incautado. En cuanto al remanente de la propiedad, el Estado sólo viene obligado a compensar cuando ésta sufre daños sustanciales como consecuencia de la expropiación o incautación. *Hamptom v. Estado Libre Asociado, supra.*

El pago de intereses forma parte de la justa compensación. Se considera un principio equitativo el que la compensación por una propiedad expropiada es aquella que ponga al dueño en una posición pecuniaria tan buena a la que estaría si la propiedad no se hubiese expropiado. *Estado Libre Asociado v. REXCO, supra.* En cuanto al cómputo de los intereses, en este caso se cuestionó la normativa entonces vigente según dispuesta por la sección 5(a) de la Ley de Expropiación Forzosa de 12 de marzo de 1903, según enmendada, ■ en tanto disponía que la sentencia donde se determinase la justa compensación debía incluir intereses al tipo anual de seis (6) por ciento sobre la cantidad finalmente concedida como valor de la propiedad, a contar desde la fecha de la adquisición hasta la fecha del pago. Aunque el Tribunal Supremo reconoció que a diferencia de la jurisdicción federal, en Puerto Rico no se había legislado para alterar la referida tasa de interés, ■ habiendo incorporado a su análisis lo dispuesto en la Regla 44.3 de las de Procedimiento Civil, ■ dicho foro resolvió que en estos casos se computarían los intereses según surgiesen del Reglamento 78-1 de la Oficina del Comisionado de Instituciones Financieras.

Cabe señalar que la Ley de Expropiación Forzosa fue enmendada para conformarla al referido dictamen. ■ Además, la nueva ley mantuvo vigente el principio de que el pago de los intereses se computa desde la fecha de la adquisición hasta la fecha del pago, quedando excluido el pago de intereses sobre la cuantía que haya sido pagada y depositada en el tribunal, si lo fuere.

En el presente caso se cuestiona el cómputo del pago de los intereses devengados a la luz del período de tiempo delimitado por el tribunal de instancia para determinar el monto de los mismos. Contrario a la normativa aplicable, dicho foro computó el pago de los intereses hasta la fecha del mes en que dictó la sentencia. Sin embargo, hasta el día de hoy la parte demandada no ha efectuado el pago, por lo cual la compensación no pagada no ha cesado de devengar intereses. En cuanto a ello, erró el tribunal.

Finalmente, en lo que respecta al derecho al pago de una suma por el uso de la propiedad al amparo de los incisos (3) ■ y (4) ■ de la Ley de 12 de marzo de 1903, según enmendada, no le asiste la razón a la parte apelante. Las referidas disposiciones proveen lo siguiente:

*"(3) La compensación por el uso de la propiedad con anticipación a, o sin, adquisición del título mientras se hallare pendiente el procedimiento, deberá pagarse sobre una base mensual, trimestral o de otro período a manera de arrendamiento por el tiempo que dure tal posesión, o en una cantidad*

*englobada, y dicha compensación estará sujeta a rebaja por concepto de cualesquiera beneficios, usos, ingresos, rentas o ganancias que de la propiedad derivaren los dueños durante el término de la posesión.*

*(4) La compensación por el término de la posesión sin adquisición del título podrá fijarse mediante convenio o determinarse tentativamente por el demandante y pagarse de acuerdo con tal convenio o determinación, y en ausencia de convenio, se determinará y adjudicará en el procedimiento la justa compensación por dicho período de posesión y se establecerá por la sentencia que recaiga en el mismo, pudiendo ser mayor o menor que la cantidad que se haya tentativamente determinado, y podrá hacerse un aumento o rebaja a la cantidad que finalmente se adjudicare como compensación por la adquisición, a fin de ajustar cualquier excedente o deficiencia en la cantidad pagada por el término de posesión temporera."*

Debemos recordar que estamos ante un caso de expropiación a la inversa en el cual el Estado no fue el que inició el proceso judicial para adquirir la propiedad de los demandantes. Por ello, es improcedente aplicarle a estos hechos una norma que evidentemente está dirigida a que por razón de la posesión y mientras dure el proceso judicial se le provea al dueño de pagos parciales, a manera de abono de la cuantía, que en su día, constituirá la justa compensación determinada por el tribunal.

El Tribunal Supremo de Puerto Rico ha interpretado que cuando el Estado expropia, lo que procede es la compensación por el valor de la propiedad al momento de la incautación y sus intereses. *Pamel Corp. v. Estado Libre Asociado*, 124 D.P.R. 853 (1989). El error no fue cometido.

Por las razones que anteceden modificamos la sentencia en cuanto a la partida de intereses y así modificada se confirma. Remítase el caso al Tribunal de Primera Instancia para que continúen allí los procedimientos en forma consistente con la presente sentencia.

Lo acordó y ordena el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 98 DTA 223

**1.** Esta es la cantidad que consta en el informe de tasación presentado por la parte demandante y fue aceptada por la parte demandada en la referida vista.

**2.** 1 L.P.R.A. Art. II sec. 7.

**3.** Art. II, sec. 9 de la Constitución del Estado Libre de Puerto Rico, 1 L.P.R.A. sec.9.

**4.** 32 L.P.R.A. sec .2907.

**5.** Según el caso, el 27 de septiembre de 1986 el Congreso de los Estados Unidos derogó la tasa del seis por ciento (6%) dispuesta en el *"Declaration of Taking Act"*, 40 U.S.C. sec. 258 (a), disposición similar a la nuestra.

**6.** En los pertinente, el inciso (a) de la referida disposición preceptúa: Se incluirán intereses al tipo que fije por reglamento la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras y que esté en vigor, al momento de dictarse la sentencia, en toda sentencia que ordena el pago de dinero, a computarse sobre la cuantía de la sentencia desde la fecha en que se dictó la sentencia y hasta que ésta sea satisfecha, incluyendo costas y honorarios de abogado. El tipo de interés se hará constar en la sentencia. La Junta fijará y revisará periódicamente la tasa de interés por sentencia tomando en consideración el movimiento en el mercado y con el objetivo de desalentar la radicación de demandas frívolas, evitar la posposición irrazonable en el cumplimiento de las obligaciones existentes y estimular el pago de las sentencias en el menor tiempo posible.

**7.** Véase la Ley Núm. 187 de 26 de diciembre de 1997.

**8.** 32 L.P.R.A. sec. 2909 (3).