EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Demetrio Emilio Amador Roberts, *et als.*<br><br>    Peticionario<br><br>              v.<br><br>E.L.A. de Puerto Rico<br><br>    Recurrido | Certiorari<br><br>2014 TSPR 87<br><br>191 DPR ____ |

Número del Caso: CC-2012-0493

Fecha: 14 de julio de 2014

Región Judicial de: Arecibo, Guayama y Utuado, Panel XI

Abogado de la Parte Peticionaria:

        Lcdo. José L. Hidalgo Irizarry


Oficina de la Procuradora General:

        Lcda. Margarita Mercado Echegaray
        Procuradora General

        Lcda. Karla Z. Pacheco Álvarez
        Procuradora General Auxiliar




Materia: Expropiación Forzosa – reclamación de daños en acción de expropiación forzosa a la inversa.




Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Demetrio Emilio Amador Roberts, *et als.* | | |
| Peticionario | | |
| v. | CC-2012-0493 | |
| E.L.A. de Puerto Rico | | |
| Recurrido | | |

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 14 de julio de 2014

En esta ocasión nos corresponde determinar si una acción de expropiación forzosa a la inversa, en la que se reclama el pago de la justa compensación por la incautación física de una franja de terreno y por la ocupación y los daños ocasionados al remanente de la propiedad, se tornó académica al instarse una acción de expropiación forzosa directa únicamente sobre la franja de terreno y la consignación de una compensación por el valor estimado de esa parte de la propiedad.

Pasemos a resumir los hechos que sirven de trasfondo a la controversia ante nuestra consideración.

I

El 30 de agosto de 2005, Demetrio Emilio Amador Roberts, Mary Elizabeth Amador Roberts, Carmen Amador Roberts, Robert Lee Amador Roberts y Demetrio Amador Inc., presentaron una demanda de expropiación forzosa a la inversa y daños a la propiedad en el Tribunal de

Primera Instancia, Sala de Arecibo, contra el Estado Libre Asociado de Puerto Rico, el Departamento de Transportación y Obras Públicas, el Programa de Comunidades Especiales y varias compañías de seguros. En síntesis, alegaron que el Estado, a través de contratistas privados, colocó un tubo de desagüe pluvial en una franja de terreno propiedad de los demandantes localizada en el municipio de Camuy, sin haberles notificado o haber recibido autorización de éstos. Además, sostuvieron que la colocación del tubo de desagüe pluvial ha causado daños al valor de su propiedad, que consta de 14.5283 cuerdas de terreno, debido a que el tubo recoge todas las aguas pluviales del Municipio de Camuy y cuando llueve las aguas se depositan en su propiedad provocando inundaciones en el terreno. A tales efectos, señalaron que la actuación del Estado representa una expropiación del terreno sin el pago de una justa compensación. Por tal razón, solicitaron que se les compensara por la franja del terreno incautada mediante la instalación del tubo de desagüe pluvial, así como una suma de $1,570,000.00 por concepto de daños al valor de la propiedad.

El 28 de diciembre de 2005, el Estado presentó su contestación a la demanda. En esencia, negó las alegaciones presentadas y levantó varias defensas afirmativas. Posteriormente, el 25 de abril de 2006, los demandantes presentaron una demanda enmendada para

incluir al Municipio de Camuy como demandado. Alegaron que el Municipio también era responsable por la construcción y colocación del tubo de desagüe pluvial. Además, arguyeron que el Municipio, sin su autorización, había invadido y estaba utilizando otra área de su propiedad como parte del programa municipal de reciclaje. A su vez, reafirmaron la responsabilidad de los demandados originales. A tales fines, solicitaron la remoción del tubo de desagüe pluvial instalado en su propiedad, la restauración de la porción del terreno afectada por la instalación del tubo de desagüe pluvial, el pago de la justa compensación por la franja de terreno ocupada, y el pago de una cantidad no menor de $1,570,000.00 por concepto de daños al valor de la propiedad. Además, solicitaron que se le ordenara al Municipio desalojar la parte del terreno ocupado para el programa de reciclaje, el pago por el tiempo que utilizó el predio de terreno y los daños ocasionados a la propiedad.

Luego de varios trámites procesales, el 14 de junio de 2007, el Tribunal de Primera Instancia desestimó sin perjuicio la reclamación en contra del Municipio sobre el terreno utilizado para el programa de reciclaje municipal y ordenó que dicha reclamación se ventilara en un pleito independiente. Asimismo, el 19 de octubre de 2007, el foro primario emitió una *Sentencia Sumaria Parcial* desestimando la reclamación en contra del Municipio sobre

la construcción y utilización del tubo de desagüe pluvial, por entender que las obras no habían sido realizadas por el Municipio ni fueron cedidas a éste.

Así las cosas, y habiéndose presentado el Informe Preliminar sobre Conferencia entre Abogados,[1] el foro primario señaló vista en su fondo para el 22 y 23 de septiembre de 2009. En la audiencia del 22 de septiembre de 2009, previo al inicio del desfile de prueba, los demandantes arguyeron que el Estado debía expropiar no sólo la franja de terreno en que se encuentra el tubo de desagüe pluvial, sino la totalidad de la propiedad. Esto por entender que el Estado no sólo había incautado físicamente la franja de terreno en donde ubicaba el tubo de desagüe pluvial, sino que había ocupado el resto de la propiedad por razón de que las aguas pluviales se descargaban en el resto de su propiedad, haciéndola inservible. A tales efectos, solicitaron que se dictara sentencia parcial en cuanto a la franja de terreno en que se encuentra el tubo de desagüe pluvial y que se pasara prueba sobre la expropiación del resto de la propiedad. El Estado se opuso y alegó que el tribunal sólo debía determinar si procedía la expropiación de la franja de terreno en la que se encontraba el tubo de desagüe pluvial.

Luego de varios incidentes en el curso de la vista en su fondo, el 23 de septiembre de 2009, el foro

---

[1] El Informe Preliminar sobre Conferencia entre Abogados se presentó el 6 de mayo de 2009.

primario determinó en corte abierta que bifurcaría la controversia. Indicó que primero había que dirimir si procedía la acción de expropiación a la inversa y, de contestar en la afirmativa, determinar si la acción procedía sobre la totalidad del terreno o sobre una parte específica del mismo. Añadió que, de proceder la expropiación a la inversa, señalaría vista para determinar la valorización, y permitiría el descubrimiento de prueba a esos efectos. A tales fines, el foro primario ordenó la continuación del juicio en su fondo para el 12 y 13 de enero de 2010.

En el transcurso del juicio en su fondo, el Estado mostró interés en expropiar parte del terreno propiedad de los demandantes. El 13 de enero de 2010, el foro primario le concedió un término al Estado para notificar cuál era el predio de terreno que interesaba expropiar y su valor. Además, solicitó que se determinara la valorización del remanente de la propiedad y el plan a seguir con esta parte de la propiedad. Por su parte, concedió un término a los demandantes para que seleccionaran un tasador a quien se le encargaría rendir un informe de valorización de la propiedad en conjunto con un tasador del Estado.

El 8 de febrero de 2010, el Estado presentó una moción informativa en la que notificó el incumplimiento de los demandantes en informar en el término dispuesto por el tribunal el tasador seleccionado para presentar el

informe conjunto de valorización de la propiedad. Así las cosas, el 3 de marzo de 2010, el Estado presentó una *Moción en Cumplimiento de Orden y Solicitud de Desestimación por Academicidad*. En ésta informó que, en cumplimiento con la orden del tribunal, interesaba adquirir una parcela de terreno con cabida de 2,105.197 metros cuadrados sita en la finca propiedad de los demandantes.

A tales efectos, sostuvo que el 26 de febrero de 2010 el Estado había presentado una acción formal de expropiación forzosa ante la sala especializada de expropiaciones del Tribunal de Primera Instancia en San Juan, para adquirir la franja de terreno propiedad de los demandantes en donde ubica el tubo de desagüe pluvial. Asimismo, informó que, como parte de la acción de expropiación forzosa, consignó en el tribunal la cantidad de $17,650.00, cantidad en que fue valorada la propiedad, en concepto del pago de la justa compensación. En vista de lo anterior, solicitó que, conforme a la norma establecida por este Tribunal en *Pamel Corp. v. E.L.A.*, 124 D.P.R. 853 (1989), se desestimara el pleito de expropiación a la inversa toda vez que el mismo se había tornado académico.

El 30 de abril de 2010, los demandantes presentaron su oposición a la solicitud de desestimación. En síntesis, sostuvieron que los hechos de este caso son distinguibles de los hechos en *Pamel Corp.*, debido a que

en dicho caso el Estado expropió la totalidad de la finca y consignó una compensación por el valor total de la misma. En cambio, sostuvieron que en este caso el Estado sólo consignó el valor de los 2,105.197 metros cuadros a expropiarse. Por tal razón, alegaron que en este caso restaba por determinar si, con la obra, el Estado ocupó y ocasionó daños a la totalidad de la finca en controversia. Luego de varios trámites procesales, el 28 de noviembre de 2011, el Tribunal de Primera Instancia, Sala de Arecibo, declaró no ha lugar la solicitud de desestimación presentada por el Estado. Razonó que restaba por determinar si con la obra el Estado dañó y ocupó la totalidad de la finca. Consecuentemente, concluyó que la controversia no se había tornado académica.[2]

Inconforme, el Estado solicitó reconsideración, la cual fue denegada. En desacuerdo, acudió al Tribunal de Apelaciones mediante recurso de apelación. El 13 de abril de 2012, el foro apelativo intermedio emitió una sentencia mediante la cual revocó la determinación del foro primario. El foro apelativo intermedio razonó que la demanda presentada se circunscribía a la reclamación del pago de justa compensación por la ocupación de la

---

[2] Cabe señalar que pendiente la controversia sobre la acción de expropiación forzosa a la inversa en la Sala de Arecibo, el 10 de mayo de 2011, la Sala de San Juan emitió una orden en la que paralizó los procedimientos hasta tanto la Sala de Arecibo hiciera una determinación con respecto al resto de la propiedad. En cuanto a la franja de terreno, la Sala de San Juan sostuvo que la controversia se había tornado académica.

franja de terreno en donde se instaló el tubo de desagüe pluvial y los daños al valor de la propiedad, y no sobre la incautación o el pago de justa compensación por la totalidad del terreno. A tales fines, determinó que, ante la presentación por el Estado de una acción de expropiación forzosa directa por la franja de terreno en controversia, el Tribunal de Primera Instancia, Sala de Arecibo, carecía de jurisdicción para atender la controversia por ésta haberse tornado académica.[3] A tenor con lo anterior, concluyó que procedía la desestimación de la demanda de expropiación a la inversa.[4]

Insatisfechos con esta determinación, el 30 de abril de 2012, los demandantes presentaron una solicitud de reconsideración, la cual fue denegada. Inconformes, el 7 de junio de 2012, acudieron ante este Tribunal mediante recurso de *certiorari*. En síntesis, sostuvieron que erró el Tribunal de Apelaciones al sostener que la acción de expropiación a la inversa se tornó académica en el momento en que el Estado presentó una acción de expropiación forzosa directa por una franja del terreno y

---

[3] El Juez Carlos A. Cabán García disintió de esta determinación por entender que sólo se convierte en académica la causa de acción sobre la parte del terreno que fue expropiada por el Estado.

[4] El Tribunal de Apelaciones añadió que aun si se avalara la postura de los demandantes de que la reclamación en la demanda era por la totalidad del terreno, su determinación sería la misma. Sostuvo que según la determinación de este Tribunal en *Pamel Corp. v. E.L.A.*, 124 D.P.R. 853 (1989), una vez el Estado presenta una acción de expropiación forzosa por una porción del predio de terreno en controversia, la causa de acción original de expropiación forzosa a la inversa se torna académica.

no por la totalidad de la propiedad en controversia. Además, señalaron que erró el foro apelativo intermedio al desestimar la reclamación en una etapa tan adelantada de los procedimientos en contravención con las Reglas de Procedimiento Civil, que requieren una solución justa, rápida y económica.

Planteada así la controversia, el 26 de octubre de 2012, acogimos el recurso de *certiorari* y expedimos el auto solicitado. Con el beneficio de los argumentos de las partes, procedemos a resolver.

II

Examinados los hechos medulares de esta controversia, evaluemos el derecho aplicable a la controversia ante nuestra consideración.

A

La sección 9 del Artículo II de nuestra Constitución prohíbe que se tome o se perjudique una propiedad para uso público sin el pago de la justa compensación. Const. P.R., Art. II sec. 9. En virtud de esta disposición constitucional, hemos reconocido que el Estado tiene la obligación de pagar una justa compensación cuando incauta una propiedad mediante el ejercicio directo del poder de dominio eminente. *Hampton Development Corp. v. E.L.A.,* 139 D.P.R. 877 (1996). De ordinario el Estado insta una acción de expropiación forzosa conforme al procedimiento establecido en la Ley de Expropiación Forzosa, Ley de 12 de marzo de 1903, según enmendada, 32 L.P.R.A. sec.

2901 *et seq.*, y la Regla 58 de las de Procedimiento Civil, 32 L.P.R.A. Ap. V R. 58. *Municipio de Guaynabo v. Adquisición*, 180 D.P.R. 206 (2010).

Conforme a la Ley de Expropiación Forzosa, toda acción o procedimiento de expropiación forzosa iniciado por el Estado deberá presentarse en la sala especializada de San Juan del Tribunal de Primera Instancia. 32 L.P.R.A. Ap. V secs. 2905, 2914. Generalmente, junto a la demanda o acción de expropiación forzosa se presenta un legajo de expropiación que contiene una declaración de adquisición y entrega material de la propiedad.[5] *Municipio de Guaynabo*, 180 D.P.R. en la pág. 217. Si la declaración cumple con los requisitos que dispone la Ley de Expropiación Forzosa y se consigna en el tribunal la compensación estimada, el título de dominio queda investido en la entidad gubernamental que solicitó la expropiación. *Id.; A.C.T. v. Iñesta*, 165 D.P.R. 891 (2005). Una vez el titular o dueño de la propiedad es notificado del procedimiento de expropiación, éste puede presentar una contestación y presentar aquellas defensas y objeciones que tenga sobre el fin público de la expropiación o sobre la cuantía declarada como justa compensación. *Municipio de Guaynabo,* 180 D.P.R. en la

---

[5] En general, la petición contendrá lo siguiente: el nombre de la entidad gubernamental expropiante, la facultad de la entidad para expropiar, el fin público de la expropiación, el valor estimado de la propiedad expropiada y una solicitud al tribunal para que ordene la inscripción del título a favor de la entidad expropiante. Cynthia Torres Torres, *La expropiación forzosa en Puerto Rico* 36 (2002).

pág. 217 *citando a A.C.T. v. 780,6141m2*, 165 D.P.R. 121, 133 (2005); *Véase además, E.L.A. v. Fonalledas Córdova*, 84 D.P.R 573, 579 (1962).

Respecto a la exigencia del pago de la justa compensación, hemos señalado que lo que se pretende es colocar al dueño de la propiedad en una situación económica equivalente a la que se encontraba con anterioridad a la expropiación de su propiedad. *E.L.A. v. Rexco*, 137 D.P.R. 683 (1994). De ordinario "la justa compensación a que tiene derecho el dueño de un bien expropiado es aquella cantidad que representa todo el valor de la propiedad al tiempo de la incautación". *Fonalledas*, 84 D.P.R. en la pág. 579. Además, hemos reconocido que el propietario puede reclamar la compensación por los daños que por motivo de la expropiación le fueron ocasionados al remanente de su propiedad. *Id.*

B

Por otra parte, en el ejercicio del poder de dominio eminente del Estado, existen casos excepcionales en los que el Estado puede ocupar o incautar un derecho real sin haber iniciado el procedimiento judicial de expropiación forzosa y sin haber consignado el pago de la justa compensación. *E.L.A. v. Northwestern Const.*, 103 D.P.R. 377 (1975). "Es precisamente para estos casos excepcionales de ocupación física o incautación de un derecho real sin previa consignación de una justa

compensación que se ha instituido la acción de expropiación inversa". *Id.* pág. 383. Mediante esta acción se garantiza el cumplimiento del Estado con las disposiciones constitucionales que establecen que nadie será privado de su propiedad sin un debido proceso de ley y sin haber mediado compensación. *Heftler International, Inc. v. J. de P.*, 99 D.P.R. 467 (1970).[6]

En palabras de la profesora Cynthia Torres Torres, "[l]a acción de expropiación forzosa a la inversa es el remedio que tiene el dueño de una propiedad afectada u ocupada físicamente por una entidad del gobierno que no ha iniciado el trámite judicial para adquirir dicha propiedad, y tampoco ha pagado la justa compensación". Cynthia Torres Torres, *La expropiación forzosa en Puerto Rico* 213 (2002). Se le domina expropiación forzosa a la inversa ("expropiación a la inversa") porque, en ausencia de compensación o de un procedimiento de expropiación forzosa iniciado por el Estado, la insta el dueño de la propiedad contra el Estado para obtener la compensación a la que tiene derecho. *Hampton Development Corp. v. E.L.A.*, 139 D.P.R. 877 (1996). Por tal razón, generalmente los tribunales aplican "las mismas normas y principios que rigen la acción de expropiación instada

---

[6] A tales efectos, el máximo Foro federal sostuvo que "so long as compensation is available for those whose property is in fact taken, the governmental action is not unconstitutional". *United States v. Riverside Bayview Homes*, Inc., 474 U.S. 121 (1985).

por el Estado". *Culebra Enterprises Corp. v. E.L.A.,* 143 D.P.R. 935, 946-947 n. 14 (1997).

En términos procesales, la acción a la inversa debe presentarse en la sala a la que corresponda la competencia territorial del terreno afectado, según se establece en las Reglas de Procedimiento Civil. 32 L.P.R.A. Ap. V R. 3.3. Una vez presentada la acción, el propietario deberá demostrar que el Estado ha ocupado o incautado su propiedad y litigará "la existencia del uso público y la justa compensación en la misma forma y manera que estas cuestiones se dilucidan en la acción de expropiación forzosa". *E.L.A. v. Northwestern Const.,* 103 D.P.R. 377, 383-384 (1975).

Adviértase, sin embargo, que la acción de expropiación a la inversa no pretende hacer del Estado un comprador involuntario de la propiedad e investirse con el título absoluto de dominio de la propiedad como de ordinario ocurre en la acción de expropiación iniciada por el Estado.[7] Si se demuestra que el Estado incautó una

---

[7] Véase, por ejemplo, Nichols on Eminent Domain, Cap. 6-7, Sec. 36.02[2]:

> There are important legal and practical differences between a '*de jure*' condemnation proceeding and an 'inverse condemnation action' . . . [A] *de jure* condemnation proceeding typically involves an action instituted by the condemnor to effect a property and **to acquire the title of thereto.** Such proceeding is instituted pursuant to the procedures set forth in the applicable statutes governing the acquisition of property by condemnation and will usually require affirmative action to be taken by the condemning authority. In contrast, an inverse condemnation action, as

propiedad, la obligación del Estado es compensar al propietario y colocarlo en una situación económica equivalente a la que se encontraba con anterioridad a la incautación de su propiedad.[8] En cuyo caso, el Estado puede optar por expropiar la propiedad o liberarla, e indemnizar al propietario por el tiempo en que la propiedad permaneció afectada. *Hampton Development Corp., 139* D.P.R. en la pág. 890; *Véase además*, José Julián Álvarez González, *Tribunal Supremo de Puerto Rico — Análisis del Término 1998-1999: Derecho Constitucional*, 69 Rev. Jur. U.P.R. 419, 433-434 (2000). Así, por el ejemplo, el Tribunal Supremo de Estados Unidos sostuvo que "where the government's activities have already worked a taking of all use of property, no subsequent action by the government can relieve it of the duty to provide compensation for the period during which the taking was effective". *First English Evangelical Lutheran Church v. Los Angeles County*, 482 U.S. 304, 321 (1987).[9]

_____

the phrase suggest, is the 'inverse' or 'reverse' of the *de jure* condemnation proceedings. The inverse condemnation action is instituted by the landowner in order to recover just compensation for a taking of his property when condemnation proceedings have not been instituted.

[8] Según hemos sostenido, "la obligación de pagar una justa compensación también cobra vigencia cuando el Estado realiza una 'incautación de hecho' al afectar de manera sustancial el uso de la propiedad, físicamente o por medio de su reglamentación". *Culebra Enterprises Corp., 143* D.P.R. en las págs. 946-947 (1997).

[9] Similares expresiones hicimos en *Hampton*, al señalar que aunque el efecto de una incautación sea temporero, "procede una compensación por el valor del uso de la propiedad durante el tiempo en que el Estado privó al

Además, mediante esta acción, el propietario puede reclamar los daños ocasionados al remanente de la propiedad por razón de la incautación, así como el pago de intereses, contados a partir del momento de la ocupación de su propiedad. *E.L.A. v. Northwestern*, 103 D.P.R. 377, 379 (1975).[10]

### III

Una vez presentada una acción de expropiación forzosa a la inversa, nada impide que el Estado, en el ejercicio de su poder de dominio eminente, opte por iniciar una acción de expropiación forzosa ("expropiación forzosa directa") sobre la propiedad en controversia. A tales efectos, hemos señalado que presentada una acción de expropiación a la inversa, si el Estado presenta una acción de expropiación forzosa directa sobre el terreno en controversia y consigna el pago de la justa compensación, la acción de expropiación a la inversa queda fundida en el pleito de expropiación forzosa instado por el Estado. *Pamel Corp. v. E.L.A.,* 124 D.P.R. 853 (1989); *Sucn. García v. Aut. de Carreteras,*

_____

dueño de todo uso productivo de la misma. La posterior liberación de las restricciones impuestas no exime al Estado del deber de compensar". *Hampton Development Corp., 139* D.P.R. en la pág. 890 haciendo referencia a *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992); *First English Evangelical Lutheran Church v. Los Angeles County*, 482 U.S. 304 (1987).

[10] Sobre los intereses, la Ley de Expropiación Forzosa establece que "en los casos en que ha habido una incautación de hecho (taking) se debe pagar el interés fijado por la Junta Financiera prevaleciente a la fecha del pago, a partir de la fecha de incautación". 32 L.P.R.A. sec. 2907;Aut. Carreteras v. 8,554.741 m/c/ II, 172 D.P.R. 1050 (2008).

114 D.P.R. 676 (1983); *Olivero v. Autoridad de Carreteras*, 107 D.P.R. 301 (1978). En tal caso, "el pleito de expropiación a la inversa se torna académico" y procede su desestimación. *Pamel Corp.,* 124 D.P.R. en las págs. 857-858. No obstante, para efectos de esta controversia, amerita que examinemos y precisemos nuestros pronunciamientos anteriores en torno a la academicidad de una acción de expropiación a la inversa cuando el Estado insta una acción de expropiación forzosa directa sobre la totalidad o parte de la propiedad objeto del pleito de expropiación a la inversa. Veamos.

La doctrina de academicidad es una manifestación del principio de justiciabilidad, principio de nuestro ordenamiento que requiere que en todo caso ante un tribunal exista una controversia real entre las partes. *Moreno v. Pres. U.P.R. II*, 178 D.P.R. 969, 973-974 (2010); *Presidente de la Cámara v. Gobernador*, 167 D.P.R. 149, 157 (2006); *E.L.A. v. Aguayo*, 80 D.P.R. 552, 584 (1958). A tenor con lo anterior, un caso no es justiciable cuando se ha tornado académico. *P.N.P. v. Carrasquillo*, 166 D.P.R. 70, 74 (2005); *Noriega v. Hernández Colón*, 135 D.P.R. 406, 421-422 (1994).

Un caso es académico cuando "se trata de obtener un fallo sobre una controversia disfrazada, que en realidad no existe, o una determinación de un derecho antes de que éste haya sido reclamado o una sentencia sobre un asunto, que al dictarse, por alguna razón no podrá tener efectos

prácticos sobre una controversia existente". *San Gerónimo Caribe Project v. A.R.Pe.*, 174 D.P.R. 640, 652 (2008). De esta manera, se evita utilizar inadecuadamente los recursos judiciales y establecer precedentes innecesarios. *Emp. Pur. Des., Inc. v. H.I.E.Tel.*, 150 D.P.R. 924 (2000). Una controversia inicialmente justiciable se torna académica cuando "los cambios fácticos o judiciales acaecidos durante el trámite judicial de una controversia, tornan en académica o ficticia su solución". *Com. de la Mujer v. Srio. de Justicia*, 109 D.P.R. 715, 724-725 (1980).[11]

En el caso de las acciones de expropiación forzosa a la inversa, hemos aplicado la doctrina de academicidad cuando el Estado inicia una acción de expropiación forzosa directa sobre la propiedad en controversia y consigna la compensación a la que tiene derecho el propietario. En *Olivero v. Autoridad de Carreteras*, *supra*, atendimos una acción de daños y perjuicios presentada en contra del Estado por los daños ocasionados a una estructura de dos pisos como consecuencia de la

---

[11] Cabe señalar que existen ciertas excepciones a la doctrina de academicidad que permiten que los tribunales intervengan en un asunto que tenga visos de academicidad. *Moreno v. Pres. U.P.R. II*, 178 D.P.R. 969, 974 (2010); *López Tirado v. Testigos de Jehová*, 177 D.P.R. 893, 908 (2010). Específicamente, los tribunales podrán atender una controversia "cuando se plantea una cuestión recurrente y capaz de evadir la revisión judicial; cuando el demandado ha modificado la situación de hechos, pero el cambio no aparenta ser permanente; y cuando algunos aspectos de la controversia se han tornado académicos pero persisten importantes efectos colaterales". *López Tirado,* 177 D.P.R. en la pág. 908.

construcción de una carretera.[12] En ese entonces, a pesar de considerar que la acción en daños y perjuicios no se trataba de una acción de expropiación a la inversa, concluimos que "[e]l inicio por la Autoridad del procedimiento de expropiación y la consignación de la suma que las partes acordaron es la justa y razonable compensación por la totalidad de la estructura, tuvo el efecto de fundir en una sola esta acción, denominada daños y perjuicios, con la acción de expropiación". *Olivero,* 107 D.P.R. en la pág. 306. Esto por entender que además de la compensación acordada por el valor de la estructura, no se justificaba una compensación adicional.[13]

Posteriormente, en *Sucn. García v. Aut. de Carreteras, supra*, descartamos parte de una reclamación de expropiación forzosa a la inversa sobre una de dos fincas en controversia por entender que, en cuanto a esa finca, la acción se había tornado académica al haberse

---

[12] Para un breve análisis de esta controversia, *véase El Tribunal Supremo de Puerto Rico Término de 1977-1978: Crítica General de Jurisprudencia*, 48 Rev. Jur. U.P.R. 499, 512 (1979).

[13] Cabe señalar que en este caso el entonces Juez Asociado señor Irizarry Yunqué emitió una opinión disidente. En ésta concluyó que la acción presentada en contra del Estado titulada acción en daños y perjuicios, era una acción de expropiación forzosa a la inversa en la que se reclamaba la compensación por la estructura y la pérdida de un equipo como consecuencia de la expropiación. Por tal razón, el Juez entendió que procedía una compensación adicional por la pérdida del equipo como daños incidentales a la expropiación. No obstante, sostuvo que la reclamación en la acción de expropiación a la inversa de una compensación por el valor de la estructura quedó fundida en el pago realizado por el Estado en el pleito de expropiación forzosa directa.

iniciado una acción de expropiación forzosa directa.  En síntesis, en *Sucn. García*, la sucesión instó una acción de expropiación forzosa a la inversa en la que planteó que la congelación de sus terrenos impidió que pudiera obtener financiamiento para pagar una contribución por herencia y solicitó la expropiación o liberación de las dos fincas más los daños ocasionados por la congelación irrazonable.

En ese entonces señalamos que con respecto a una de las fincas, el Estado inició un procedimiento de expropiación y consignó el pago de la justa compensación. A su vez, sostuvimos que por razón de una legislación, con la consignación de la compensación la sucesión pudo acogerse a una amnistía contributiva y librarse del pago de los intereses, recargos y penalidades que pudieron haberse acumulado por motivo de la congelación irrazonable. Por tal razón, concluimos que la reclamación se tornó académica en cuanto a una de las fincas porque el Estado inició una acción de expropiación sobre ésta, consignó la justa compensación y cesó de existir la reclamación en daños por la congelación irrazonable. Al evaluar esos elementos en su totalidad, entendimos que, en cuanto a esa finca, la controversia se había tornado académica.

Finalmente, en *Pamel Corp. v. E.L.A.*, *supra*, concluimos que una acción de expropiación a la inversa en la que se reclamaba la justa compensación por el valor de

una propiedad incautada, más una compensación en daños por el tiempo que el Estado había ocupado la propiedad (13 años), se tornó académica cuando el Estado presentó una acción de expropiación forzosa directa sobre la propiedad en controversia y consignó una compensación únicamente por el valor de la propiedad. Esta conclusión, sin embargo, estuvo precedida por un análisis en el que descartamos la procedencia de la reclamación de una compensación en daños por los trece (13) años que el Estado ocupó la propiedad sin haber compensado al propietario. [14] Por tanto, dado a que entendimos que no procedía la compensación en daños por el periodo de tiempo en que el Estado ocupó la propiedad, concluimos que, con la presentación de la acción de expropiación forzosa directa por el predio del terreno en

---

[14] Como bien reconocimos en *Hampton*, la determinación de este Foro en *Pamel Corp.* de no reconocer una reclamación en daños por el tiempo en que el Estado ocupó la propiedad fue sumamente criticada por la academia por haberse apartado de la norma establecida en la jurisprudencia federal. *Hampton*, 139 D.P.R. en la pág. 881, n. 1 *haciendo referencia a* Wallace González Oliver, *Perestroika en la reglamentación inmobiliaria puertorriqueña*, 1 Rev. Acad. Pur. Jur. y Leg. 49 (1989); Antonio Escudero Viera, *Contestación al Discurso del Licenciado Wallace González Oliver*, 1 Rev. Acad. Pur. Jur. y Leg. 71 (1989); José Julián Álvarez González, *Derecho Constitucional, Congelaciones de terrenos y la cláusula de justa compensación: El cántaro regresa a la fuente*, 61 Rev. Jur. U.P.R. 637, 742 (1992). Según citamos anteriormente, en *First English Evangelical Lutheran Church*, el Tribunal Supremo federal no dio margen para que el Estado pudiese librarse de pagar una compensación por el tiempo en que ocupó la propiedad. Para una discusión en mayor detalle, véase José Julián Álvarez González, *Derecho constitucional de Puerto Rico y relaciones constitucionales con los Estados Unidos: casos y materiales* 664-668 (2009).

controversia, la acción de expropiación a la inversa se había tornado académica.

Obsérvese que para efectos del pleito de expropiación a la inversa, en los casos analizados la presentación de la acción de expropiación directa significó, por un lado, el reconocimiento del Estado de que hubo una incautación sobre la totalidad o parte del terreno en controversia; y, por otro, la consignación de la justa compensación por el valor de la propiedad, única compensación a la que, según estimamos, tenían derecho los propietarios en esos casos. En consecuencia, en los casos antes descritos sostuvimos que la acción de expropiación a la inversa quedó fundida, en su totalidad o en parte, en la acción de expropiación directa y se tornó académica. Es decir, debido a que entendimos que los reclamos que dieron base a la acción de expropiación a la inversa quedaron comprendidos en la acción de expropiación instada por el Estado, la controversia en el pleito de expropiación a la inversa, o parte de ésta, cesó de existir, por lo que procedía su desestimación.

Esto no implica que en todo caso en que se haya presentado una acción de expropiación a la inversa y que el Estado con posterioridad presente una acción de expropiación forzosa directa sobre la totalidad o parte de la propiedad en controversia, la acción de expropiación a la inversa se tornará académica de por sí. Como bien ha sostenido el Tribunal Supremo de Estados

Unidos, "a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome. Where one of the several issues presented becomes moot, the remaining live issues supply the constitutional requirement of a case or controversy". *Powell v. McCormack*, 395 U.S. 486, 496-497 (1969) (citas omitidas).

Por tanto, para que una acción de expropiación a la inversa se torne académica mediante la posterior presentación de una acción de expropiación directa, ésta última debe tener el efecto de cesar la vitalidad de los reclamos y controversias presentes en la acción de expropiación a la inversa. En caso de que la acción de expropiación forzosa directa tenga el efecto de tornar en académico alguno de los asuntos en controversia en el pleito de acción a la inversa, permanecerá inalterada la justiciabilidad de aquellas controversias que no hayan cesado de existir.

IV

Discutida la normativa aplicable, pasemos a resolver la controversia ante nuestra consideración.

En este caso, luego de presentada una acción de expropiación forzosa a la inversa en la Sala de Arecibo, en la que se reclamó el pago de la justa compensación por la incautación física de una franja de terreno en donde se instaló un tubo de desagüe pluvial y por la ocupación y los daños ocasionados al remanente de la propiedad, el

Estado, en el ejercicio de su poder de dominio eminente, optó por presentar una acción de expropiación forzosa directa en la Sala de San Juan. En la acción, **el Estado se limitó a expropiar la parte del terreno en donde ubica el tubo de desagüe pluvial y consignó únicamente la compensación por el valor estimado de esa parte del terreno.** Mediante esta acción, el Estado reconoció que incautó parte del terreno en controversia en el pleito de expropiación a la inversa y consignó la justa compensación por el valor estimado de esa parte de la propiedad. Por lo tanto, esta acción del Estado tuvo el efecto de tornar en académica la controversia entre las partes respecto a esa franja de terreno.[15]

Ahora bien, los demandantes sostienen que, además del terreno donde ubica el tubo de desagüe pluvial, el Estado ocupó y ocasionó daños a la totalidad del terreno perteneciente a éstos.  Por tal razón, alegan que para que la acción de expropiación a la inversa se torne académica en su totalidad, no basta con que el Estado haya iniciado una acción de expropiación directa sobre la franja de terreno en donde ubica el tubo de desagüe pluvial y consigne una compensación únicamente por el valor de ese predio de terreno.

En cambio, el Estado sostiene que una vez se presenta una acción de expropiación forzosa directa, la acción de expropiación a la inversa se torna académica,

---

[15] De hecho, ninguna de las partes ha cuestionado la academicidad de esta parte del predio de terreno.

pues queda fundida en su totalidad en la acción iniciada por el Estado. Esto por entender que el remedio que procura el propietario en la acción de expropiación a la inversa es el mismo que podría reclamar en la acción de expropiación iniciada por el Estado. Además, señala que como soberano no está obligado a expropiar la totalidad de la propiedad. Por todo lo anterior, sostiene que procede la desestimación del pleito de expropiación a la inversa por haberse tornado académico. No le asiste la razón.

En primer lugar, según la jurisprudencia antes discutida, la presentación de una acción de expropiación forzosa directa sobre una propiedad que también es objeto de una acción de expropiación a la inversa, de por sí no torna académica la totalidad de la acción de expropiación a la inversa. Para que se torne académica en su totalidad, la acción de expropiación forzosa directa debe tener el efecto de cesar la vitalidad de todos los reclamos y controversias presentes en la acción de expropiación a la inversa.

Si bien el Estado tiene razón al señalar que como soberano no está obligado a expropiar la totalidad de la propiedad objeto del pleito de expropiación a la inversa, la determinación que haga sobre qué propiedad opta por expropiar o qué remedios se contemplan en la compensación consignada incide sobre la procedencia de la solicitud de desestimación por academicidad presentada en el pleito de

expropiación a la inversa. En este caso, el Estado, en el ejercicio de su poder de dominio eminente, optó por expropiar únicamente el terreno en que está ubicado el tubo de desagüe pluvial. Además, consignó el pago de la compensación estimada sólo por el valor de esa parte del terreno. No obstante, solicitó la desestimación de la totalidad de la acción de expropiación a la inversa, acción en la que además se solicita una compensación por la ocupación[16] y los daños ocasionados al resto de la propiedad. Por lo tanto, para efectos de la doctrina de academicidad, la controversia con respecto al terreno restante no ha cesado de existir. Esto es, la acción de expropiación forzosa directa no tuvo el efecto de extinguir la totalidad de los reclamos a los que la parte demandante podría tener derecho en la acción de expropiación a la inversa. Por tal razón, con respecto a esa parte del terreno la controversia no se tornó académica y no procede su desestimación.

En segundo lugar, contrario a lo que sostiene el Estado, el hecho de que en la acción de expropiación directa el propietario pueda procurar remedios que también reclamó en la acción de expropiación a la inversa no convierte, necesariamente, la acción a la inversa en académica. Si bien es cierto que un procedimiento de

---

[16] Cabe destacar que distintas jurisdicciones han reconocido que las constantes inundaciones ocasionadas por razón de una expropiación pueden constituir una incautación para efectos de la cláusula de la justa compensación. *Véase* Nichols on Eminent Domain, Cap. 6-7, Sec. 6.01 [14][2].

expropiación forzosa directa el propietario puede presentar aquellas defensas y objeciones que tenga sobre la cuantía declarada como justa compensación y reclamar los daños ocasionados al remanente, ello no significa que la acción de expropiación a la inversa se torne académica. Por el contrario, la posibilidad de levantar esas defensas y objeciones denota que la controversia entre las partes en la acción de expropiación a la inversa sigue viva. En todo caso demuestra que ambas acciones presentan cuestiones comunes de hechos y de derecho pendientes ante el tribunal, elementos propicios a considerar para la consolidación de ambos recursos.

Relacionado con lo anterior, el Estado sostiene que la sala de expropiaciones es la única con competencia para atender las acciones de expropiación iniciadas por el Estado y procede que ésta asuma la jurisdicción sobre la totalidad de la controversia por haberse tornado académica. Alega que, de lo contrario, se fragmentaría el procedimiento en dos salas distintas, lo cual sería contrario a la economía procesal. En su argumentación, el Estado parece indicar que un elemento a considerar al determinar si procede la desestimación por academicidad es que la Sala de San Juan tiene competencia sobre la acción de expropiación iniciada por el Estado. No obstante, la determinación sobre la solicitud de desestimación por academicidad de esta controversia es ajena al planteamiento del Estado sobre la competencia de

la sala especializada de San Juan. Según señalamos, la controversia con respecto al resto de la propiedad se mantiene viva y no procede su desestimación por academicidad.

Ahora bien, el Estado tiene razón al señalar que la Ley de Expropiación Forzosa establece que la sala competente para atender pleitos de expropiación forzosa iniciados por el Estado es la sala especializada de San Juan. 32 L.P.R.A. Ap. V secs. 2905, 2914. En su consecuencia, cuando el Estado inicia una acción de expropiación forzosa sobre propiedad que también es objeto de una acción de expropiación forzosa a la inversa, la sala competente para atender la materia objeto de la acción de expropiación forzosa directa es la Sala de San Juan.

Por lo tanto, el inicio de una acción de expropiación forzosa sobre una propiedad que también es objeto de una acción de expropiación forzosa a la inversa, no sólo incide sobre la vitalidad del pleito de expropiación a la inversa sino que también incide sobre la competencia de las salas en el foro primario. Esto, en caso de que la acción de expropiación iniciada por el Estado sólo abarque una parte de la propiedad en controversia, puede tener el efecto de dividir la acción original en dos salas distintas: la sala en que se ventila el pleito de expropiación a la inversa y la sala especializada de expropiaciones. A su vez, puede

coincidir con que una parte del pleito de expropiación a la inversa se haya tornado académico, según hemos discutido.

Conviene entonces que, como norma general, en casos en que se haya presentado una acción de expropiación a la inversa y posteriormente el Estado inicie una acción de expropiación forzosa sobre parte de la propiedad, se consoliden ambos pleitos y se ventile la totalidad de la controversia en la sala especializada de expropiaciones en San Juan. De esta forma, se evita la bifurcación de los procesos en dos salas distintas y se promueve la buena administración de la justicia, la aceleración en la resolución de este tipo de disputas y la reducción de costos en la litigación. *Vives Vázquez v. E.L.A.*, 142 D.P.R. 117, 136 (1996).

No obstante, en este caso el pleito de expropiación a la inversa, en el que se ventila la controversia sobre el remanente de la propiedad y sobre el cual la Sala de Arecibo tiene competencia, se encuentra en la etapa final del juicio en su fondo. Es decir, ya concluyó la etapa del descubrimiento de prueba y se presentó el Informe Preliminar sobre Conferencia entre Abogados. A su vez, la Sala de San Juan paralizó los procedimientos ante sí para permitirle a la Sala de Arecibo hacer una determinación sobre el remanente de la propiedad. Consecuentemente, entendemos que en este caso, por excepción, la consolidación de los recursos desvirtuaría el propósito

de las Reglas de Procedimiento Civil de garantizar una solución justa, rápida y económica en los procedimientos. Por lo tanto, en esta ocasión no procede la consolidación de los pleitos y le corresponde a la Sala de Arecibo determinar si proceden los reclamos de los demandantes sobre el resto de la propiedad.

V

A tenor con lo anterior, resolvemos que con la presentación de una acción de expropiación forzosa por una parte de la propiedad en controversia y la consignación de la justa compensación por esa parte de la propiedad, la acción de expropiación forzosa a la inversa sólo se tornó académica en cuanto a esa parte de la propiedad. Consecuentemente, se revoca la sentencia del Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que continúe con los procedimientos conforme a lo aquí resuelto.

Se dictará Sentencia de conformidad.

Anabelle Rodríguez Rodríguez
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Demetrio Emilio Amador Roberts, *et als.*<br><br>Peticionario<br><br>v.<br><br>E.L.A. de Puerto Rico<br><br>Recurrido | CC-2012-0493 | |

Sentencia

San Juan, Puerto Rico, a 14 de julio de 2014

Por los fundamentos expresados en la Opinión que antecede, los cuales se incorporan íntegramente a la presente Sentencia, se revoca la sentencia del Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que continúe con los procedimientos conforme a lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo