EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| A la Orden Shopping, S.E.<br><br>Peticionaria<br><br>v.<br><br>Autoridad de Energía Eléctrica de Puerto Rico<br><br>Recurrida | Certiorari<br><br>2024 TSPR 14<br><br>213 DPR ___ |

Número del Caso: CC-2022-0662

Fecha: 22 de febrero de 2024

Tribunal de Apelaciones:

   Panel VII

Abogados de la parte peticionaria:

   Lcdo. Ricardo E. Carrillo Delgado

Abogados de la parte recurrida:

   Lcdo. Charles Bimbela Quiñones
   Lcda. Brunilda Rodríguez Vélez
   Lcda. Irelis M. Rodríguez Guzmán

Materia: Contratos y Derechos Reales – Aplicación de la Ley de Contabilidad del Gobierno de Puerto Rico y las normas de contratación gubernamental a la Autoridad de Energía Eléctrica; procedencia de la acción de expropiación forzosa a la inversa ante la ausencia de un contrato que cumpla con las exigencias del ordenamiento jurídico.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

## EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| A la Orden Shopping, S.E.<br><br>    Peticionaria<br><br><br>v.<br><br>Autoridad de Energía Eléctrica de Puerto Rico<br><br>    Recurrida | CC-2022-0662 | Certiorari |

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

En San Juan, Puerto Rico, a 22 de febrero de 2024.

En esta ocasión se nos presenta la oportunidad de analizar si la Ley de Contabilidad del Gobierno de Puerto Rico y las reglamentaciones sobre contratación gubernamental le aplican a la Autoridad de Energía Eléctrica de Puerto Rico. De aplicarle, debemos entonces analizar si en la situación de autos, donde no se cumplen con los requisitos de contratación gubernamental, procedía desestimar la causa de acción de expropiación forzosa a la inversa presentada por la parte demandante.

Por los fundamentos que expondremos a continuación, resolvemos que la Ley de Contabilidad del Gobierno de Puerto Rico y las reglamentaciones sobre contratación gubernamental le aplican a la Autoridad de Energía Eléctrica, pero ello no impide una acción de expropiación

forzosa a la inversa, por lo que revocamos la sentencia emitida por el tribunal apelativo intermedio y remitimos el caso al foro de instancia para que se continúen los procedimientos judiciales conforme a nuestros recientes pronunciamientos en *Ortiz Zayas v. ELA*, 2023 TSPR 43 (2023).

## I

A la Orden Shopping Center (A la Orden) es dueña en pleno dominio de una propiedad de naturaleza comercial ubicada en el municipio de Toa Baja, Puerto Rico. A la Orden suscribió un contrato de arrendamiento comercial con la Autoridad de Energía Eléctrica (AEE) que culminó el 31 de diciembre de 2019. Vencido el contrato de arrendamiento, la AEE continuó ocupando la propiedad, sin contrato y sin pagar cánones de arrendamiento durante el periodo que comprendió desde el 1 de enero de 2020 hasta el 17 de septiembre de 2020. Del expediente se desprende que, durante este periodo, A la Orden no instó acción alguna de desahucio para recuperar la posesión del inmueble o de expropiación a la inversa para solicitar ser resarcida por incautación ilegal de su propiedad. Ulteriormente, el 18 de septiembre de 2020, las partes suscribieron un nuevo contrato de arrendamiento.

No obstante, A la Orden presentó una *Demanda* en cobro de dinero donde reclamó el pago por la cantidad de $114,323.44 en virtud de los cánones de arrendamiento correspondientes al periodo en que la AEE ocupó la

propiedad sin contrato. En respuesta, la AEE levantó como defensa que, durante el referido periodo, entre las partes no existía un contrato vigente que cumpliese con los requisitos de contratación gubernamental, incluyendo el constar por escrito como requisito indispensable, por lo cual no procedía el pago de los cánones de arrendamiento solicitados.

Así las cosas, A la Orden enmendó su *Demanda* con el propósito de alegar que la AEE, al permanecer en la propiedad inmueble lucrándose de su uso, expropió propiedad privada sin pagar una justa compensación, en contravención con la Sección 7 del Artículo II de la Constitución de Puerto Rico y la Quinta Enmienda a la Constitución de los Estados Unidos.

Enterado de lo anterior, la AEE presentó una *Moción de Desestimación al amparo de la Regla 10.2.* En síntesis, adujo que aun tomando como ciertos todos los hechos bien alegados en la *Demanda*, no se justificaba la concesión de un remedio ya que durante el periodo en controversia no existía un contrato firmado que cumpliese con todas las exigencias de nuestro ordenamiento jurídico respecto a la contratación gubernamental. Por lo anterior, añadió que la AEE estaba legalmente impedida de desembolsar fondos públicos para el pago de estos cánones. Asimismo, planteó que el caso no versa sobre un pleito de expropiación forzosa, sino que trata sobre un cobro de dinero respecto a un contrato cobijado por la Ley Núm. 230 de

23 de julio de 1974, conocida como Ley de Contabilidad del Gobierno de Puerto Rico (Ley de Contabilidad de PR), 3 LPRA sec. 283 *et seq*. Además, la AEE señaló que A la Orden pretende cobrar una cuantía a la que tendría derecho bajo la doctrina de tácita reconducción, pero citando a *Vicar Bulders v. ELA*, 192 DPR 256 (2015), manifestó que la tácita reconducción no es compatible con las leyes que regulan la contratación gubernamental, por lo que no puede aplicarse a un contrato en que el Estado es parte.[1]

Por su parte, A la Orden presentó su réplica, donde reiteró que este caso versaba sobre su derecho constitucional al disfrute de la propiedad, el cual había sido trasgredido por la AEE al incautar ilegalmente su propiedad. Señaló que la AEE pretendía liberarse de su responsabilidad económica amparándose en legislación dirigida a la protección de los fondos del Gobierno de Puerto Rico y evitar la corrupción gubernamental. Además, argumentó que la Ley de Contabilidad de PR no le aplica a la AEE por ser una entidad autónoma del Gobierno de Puerto Rico, dirigida por una Junta de Gobierno, según la legislación que la creó.[2]

Por no coincidir con lo expresado por los demandantes en su réplica, la parte demandada presentó

---

[1] *Moción de Desestimación al Amparo de la Regla 10.2,* Apéndice de la Petición de *certiorari*, págs. 70-95.

[2] *Réplica a Moción de Desestimación al Amparo de la Regla 10.2,* Apéndice de la Petición de *certiorari*, págs. 96-110.

una dúplica donde además de reiterar sus anteriores planteamientos, añadió que la controversia respecto a la expropiación forzosa no es justiciable conforme la doctrina de academicidad, debido a que las partes habían firmado un nuevo contrato de arrendamiento. Asimismo, insistió en que la demandante no utilizó los remedios legales disponibles mientras la controversia estuvo madura, es decir, mientras la AEE ocupaba el inmueble sin contrato válido.[3]

Considerados los planteamientos de las partes, el Tribunal de Primera Instancia dictó *Sentencia* en la cual desestimó la *Demanda* con perjuicio. El foro primario esbozó que A la Orden está impedido de recobrar los cánones de arrendamiento del periodo en controversia, ante la ausencia de un contrato que cumpla con la rigurosidad exigida en la contratación gubernamental. Sostuvo que, sin este contrato, la AEE estaba impedida de desembolsar fondos del erario. Además, resolvió que el planteamiento de la demandante respecto a una expropiación forzosa es académico, según planteado por la parte demandada en el sentido de que se firmó un nuevo contrato de arrendamiento.[4]

En desacuerdo con dicho dictamen, A la Orden presentó un recurso de apelación ante el Tribunal de

---

[3] *Dúplica a Réplica a Moción de Desestimación al Amparo de la Regla 10.2,* Apéndice de la Petición de *certiorari,* págs. 112-125.

[4] *Sentencia,* Apéndice de la Petición de *certiorari,* págs. 127-138.

Apelaciones. En particular, señaló que el foro de instancia erró al desestimar la *Demanda* aplicando erróneamente las disposiciones y doctrinas sobre la contratación gubernamental y pasando por alto los planteamientos constitucionales esbozados. Asimismo, resaltó que el foro de instancia no pasó juicio sobre si la Ley de Contabilidad de PR le aplicaba a la AEE.[5]

Evaluados los alegatos, el Tribunal de Apelaciones confirmó la *Sentencia* de desestimación emitida por el Tribunal de Primera Instancia. En síntesis, el Tribunal de Apelaciones validó que como entre el 31 de diciembre de 2019 y el 18 de septiembre de 2020 no existió un contrato de arrendamiento que cumpliera con las formalidades de la contratación gubernamental, no se generó una obligación jurídica para la AEE. El foro apelativo agregó que A la Orden debió pactar cláusulas contractuales sobre lo que procedería luego del vencimiento del contrato, en qué condiciones se extendería el arrendamiento y cláusulas penales ante algún incumplimiento. Razonó que, al no estipularlas, solamente tenía disponible como remedio la acción de desahucio, la cual no ejerció oportunamente. Por otro lado, el Tribunal de Apelaciones determinó que no es correcto el planteamiento constitucional de que la AEE incautó la propiedad sin mediar justa compensación, debido a que en realidad lo que ocurrió fue que el

---

[5] *Apelación,* Apéndice de la Petición de *certiorari,* págs. 36-51

periodo reclamado quedó descubierto por el paso del tiempo.[6]

Inconforme, y en síntesis, A la Orden solicitó reconsideración en la que presentó dos argumentos para que el foro apelativo reconsiderara su sentencia confirmatoria: primero, que atendiera el planteamiento de naturaleza constitucional obviado por la sentencia, por este estar dirigido a un efecto posterior a la vigencia de un contrato válido y por superar las disposiciones legales en torno a la Ley de Contabilidad de PR. Segundo, que atendiera el planteamiento sobre la no aplicabilidad de la Ley de Contabilidad de PR a la AEE, por ser esta una entidad autónoma del Gobierno de Puerto Rico.[7] No obstante, el Tribunal de Apelaciones se sostuvo en su dictamen y denegó reconsiderar.[8]

Inconforme, A la Orden acudió ante esta Curia y señaló que los foros *a quo* erraron al sostener que estaba legalmente impedida de requerir la compensación correspondiente por el uso de la propiedad durante el periodo donde no mediaba un contrato entre las partes y en contra de la voluntad de ésta, lo que violentó las cláusulas constitucionales que prohíben que una persona sea privada de su libertad o propiedad sin el debido

---

[6] *Sentencia del Tribunal de Apelaciones,* Apéndice de la Petición de *certiorari,* págs. 2-7.

[7] *Moción de Reconsideración,* Apéndice de la Petición de *certiorari,* págs. 9-16.

[8] *Resolución,* Apéndice de la Petición de *certiorari,* pág. 18.

proceso de ley y justa compensación. Además, adujo que los foros erraron al no considerar que las disposiciones de la Ley de Contabilidad de PR no le aplican a la AEE por ser un ente jurídico autónomo y separado del Gobierno de Puerto Rico.

Perfeccionado el recurso, resolvemos.

## II

### A. Expropiación forzosa

Nuestra Constitución reconoce el derecho de cada ciudadano al disfrute de la propiedad como un derecho fundamental.[9] Sin embargo, este derecho no es absoluto y cede ante el poder inherente que tiene el Estado para adquirir bienes privados mediante el procedimiento de expropiación forzosa,[10] pues "el poder del Estado es un atributo inherente a su poder soberano y, como tal, de superior jerarquía a todos los derechos de propiedad".[11]

Ahora bien, este poder de expropiar del Estado tampoco es irrestricto. Nuestra Carta Magna establece límites importantes al ejercicio de esta facultad cuando en su Artículo II, Sección 9 prohíbe que se tome o se perjudique "propiedad privada para uso público a no ser

---

[9] Art. II, Sec. 7, Const. PR, LPRA, Tomo 1.

[10] *Administración de Terrenos de Puerto Rico v. Ponce Bayland Enterprises,* 207 DPR 586, 603 (2021); *Mun. De Guaynabo v. Adquisición*, 180 DPR 206, 216 (2010); A.C.T. v. 780.6141 $M^2$, 165 DPR 121, 130 (2005).

[11] A.C.T. v. 780.6141, 165 DPR 121, 130 (2005).

mediante el pago de una justa compensación y de acuerdo con la forma provista por ley".[12]

De igual forma, la Quinta Enmienda de la Constitución federal establece que ninguna persona será privada de su vida, libertad o propiedad sin el debido proceso de ley, ni se le podrá expropiar su propiedad para destinarla a un uso público sin una justa compensación.[13] Además, la Decimocuarta Enmienda de esa misma Constitución establece que "ningún estado privará a persona alguna de su vida, de su libertad o de su propiedad, sin el debido procedimiento de ley, ni negará a nadie, dentro de su jurisdicción, la igual protección de las leyes".[14] Por lo tanto, para que el Estado pueda expropiar forzosamente una propiedad privada, se le exige que pague una justa compensación, destine el bien expropiado para uso público y proceda con sujeción a las leyes que regulan este procedimiento en nuestra jurisdicción.[15]

Por otro lado, existen tres circunstancias en las cuales se entiende que el Estado ha expropiado una propiedad y, por ende, viene obligado a compensar a su propietario: (1) cuando se ejerce el poder de dominio

---

[12] Art. II, Sec. 9, Const. PR, LPRA, Tomo 1.

[13] Emda. V, Const. EE.UU., LPRA, Tomo 1.

[14] Emda. XIV, Const. EE.UU., LPRA, Tomo 1.

[15] *Administración de Terrenos de Puerto Rico v. Ponce Bayland Enterprises,* 207 DPR 586, 603-604 (2021); *Véase* Ley de Expropiación Forzosa, 32 LPRA sec. 2901 *et seq.; Véase,* también Regla 58 de Procedimiento Civil de 2009 (32 LPRA Ap. V).

eminente al presentar un recurso de expropiación; (2) cuando ocurre una incautación de hecho mediante ocupación física; (3) cuando se reglamenta el uso de una propiedad.[16] El segundo de los escenarios es el que está presente en la controversia que nos ocupa.

Cuando se trata de una incautación de hecho mediante ocupación física, el Tribunal Supremo de Estados Unidos ha expresado que la incautación física de una propiedad se considera la intrusión más seria de los intereses propietarios de una persona debido a que el propietario pierde sus facultades básicas de poseer, usar y excluir a otros de su posesión y uso.[17] Además, se considera incautación física de una propiedad "cualquier privación o interferencia sustancial en el dominio o disfrute de una cosa".[18] Incluso, **la incautación puede ser temporal.[19]** "Sobre esta última, se ha dicho que 'existe una expropiación temporal cuando se priva a una persona de la posesión, disfrute y disposición de su propiedad por un término que se podrá establecer antes de que el evento de

---

[16] Aut. Carreteras v. 8554.741, 172 DPR 1050, 1060 (2008); Velázquez Velázquez v. E.L.A., 135 D.P.R. 84, 88 (1994); Culebra Enterprises Corp. v. ELA, 127 D.P.R. 943, 952-953 (1991).

[17] Loretto v. Teleprompter Manhattan CATV Corp., 458 US 419, 435 (1982).

[18] ELA v. Northwestern Const. Inc., 103 DPR 377, 384 (2975).

[19] Ortiz Zayas v. ELA, 2023 TSPR 43, pág. 15 (2023).

la privación ocurra o posteriormente, cuando se devuelve la propiedad'".[20]

En particular, para los casos excepcionales de ocupación física donde el Estado ha ocupado o incautado un derecho real sin haber iniciado el procedimiento judicial de expropiación forzosa y sin haber consignado el pago de la justa compensación, existe la acción de expropiación forzosa a la inversa.[21] Es a través de esta acción que:

> [S]e garantiza el cumplimiento del Estado con las disposiciones constitucionales que establecen que nadie será privado de su propiedad sin un debido proceso de ley y sin haber mediado justa compensación . . . . En ausencia de compensación o de un procedimiento de expropiación forzosa iniciado por el Estado, la insta el dueño de la propiedad contra el Estado para obtener la compensación a la que tiene derecho.[22]

Una vez demostrado que el Estado incautó una propiedad, su obligación será compensar al propietario y colocarlo en una situación económica equivalente a la que se encontraba con anterioridad a la incautación de su propiedad.[23] Este es el propósito principal de la justa compensación. Si, como en el caso de autos, se trata de

---

[20] *Íd.* (citando a C. Torres Torres, La Expropiación Forzosa de Puerto Rico: ley, jurisprudencia, estudio y guía práctica, San Juan, First Book Pub., 2002, pág. 129).

[21] Amador Roberts v. ELA, 191 DPR 268, 279 (2014); ELA v. Northwestern Const., Inc. *supra,* pág. 383.

[22] Amador Roberts v. ELA, *supra*, págs. 279-280. ("[G]eneralmente los tribunales aplican 'las mismas normas y principios que rigen la acción de expropiación instada por el Estado'").

[23] *Íd.* en las págs. 279-281.

una incautación de hecho al afectar de manera sustancial el uso de la propiedad, ya sea físicamente o por medio de reglamentación, la compensación comprenderá "el valor de uso de la propiedad durante el tiempo en que el Estado privó al dueño de todo uso productivo de ésta", aunque el efecto de la privación haya sido temporero.[24]

En lo que respecta a la controversia que nos ocupa, recientemente y luego que las partes presentaran su *Certiorari* ante este Tribunal, emitimos opinión en el caso de *Ortiz Zayas v. ELA,* 2023 TSPR 43, donde atendimos una situación muy similar a la de autos. En esencia, Ortiz Zayas le arrendó una propiedad al Departamento de Justicia, pero luego del vencimiento del contrato de arrendamiento, este se mantuvo ocupando la propiedad. Después de un tiempo requiriendo el desalojo de la propiedad, Ortiz Zayas presentó una acción de desahucio. Ante la demanda, el Departamento de Justicia entregó las llaves, pero no pagó los cánones de arrendamiento adeudados. Por tal motivo, Ortiz Zayas instó una acción de expropiación forzosa a la inversa en contra del ELA por el periodo en que se le privó del uso de su propiedad sin pagarle justa compensación, a pesar de diligentemente y con premura haber requerido desocupar la misma.[25]

---

[24] Hampton Development Corp. v. ELA, 139 DPR 877, 890 (1996).

[25] Ortiz Zayas v. ELA, *supra*, págs. 1-6.

Tras un ponderado análisis de la controversia y expediente del caso, en *Ortiz Zayas* concluimos que en estos escenarios "procede la acción de expropiación forzosa a la inversa y, en consecuencia, una justa compensación",[26] pues quedaba claro que:

> (1) [E]l Estado . . . ocupó por un periodo de tiempo la propiedad objeto del presente litigio; (2) que dicha ocupación fue para un fin público; (3) que la misma ocurrió vencido determinado contrato de arrendamiento, y (4) que, a pesar de los requerimientos de entrega de la propiedad por parte de sus propietarios, el Estado hizo caso omiso y continuó ocupando la misma.
>
> . . .
>
> Ello, a todas luces, constituye una ocupación física, por parte del Estado, de la propiedad perteneciente al matrimonio Ortiz Mateo que activó la figura de la expropiación forzosa a la inversa y, en consecuencia, del derecho a una justa compensación.[27]

B. *La Ley de Contabilidad de PR y la contratación gubernamental*

La Ley Núm. 230 de 23 de julio de 1974, conocida como la Ley de Contabilidad del Gobierno de Puerto Rico (Ley de Contabilidad de PR), 3 LPRA sec. 283 *et seq.*, establece la política pública respecto al control y contabilidad de fondos y propiedad pública en el Gobierno de Puerto Rico. Sus propósitos principales son: autorizar al Secretario de Hacienda de Puerto Rico a diseñar e

---

[26] *Íd.* en las págs. 2-3.

[27] *Íd.* en las págs. 30-31.

intervenir en la organización fiscal, los sistemas de contabilidad y los procedimientos de pagos e ingresos de las *dependencias y entidades corporativas* del Estado; y disponer los principios y normas generales que deberán seguirse en la contabilidad de ingresos, asignaciones, desembolsos y propiedad pública.[28]

En específico, el Artículo 2 de la Ley de Contabilidad de PR dispone como política pública que la contabilidad del gobierno "constituya un control efectivo sobre los ingresos, desembolsos, fondos, propiedad y otros activos del gobierno",[29] que exista un "control previo de todas las operaciones del gobierno y que dicho control previo se desarrolle dentro de cada dependencia, *entidad corporativa* o Cuerpo Legislativo haciendo que el control interno funcione de forma independiente del control previo general . . .".[30] *Como parte del diseño e intervención en la organización fiscal y los sistemas y procedimientos de contabilidad, el Secretario de Hacienda,* "en coordinación con las dependencias y entidades corporativas, será responsable de diseñar o aprobar la organización fiscal, los sistemas de contabilidad y los procedimientos de pagos e ingresos de todas las dependencias y entidades corporativas . . .".[31]

---

[28] Ley Núm. 230-1974, 3 LPRA sec. 283 *et seq.*

[29] 3 LPRA sec. 283a(b).

[30] 3 LPRA sec. 283a(f) (Énfasis suplido).

[31] 3 LPRA sec. 283c(a) (Énfasis suplido).

Para esto, puede autorizar a las dependencias o entidades corporativas a diseñar sus propios sistemas y procedimientos, pero se requerirá la intervención de éste, de tiempo en tiempo, y que los mismos cumplan a cabalidad con su cometido.[32]

Hay que hacer notar que la mencionada Ley de Contabilidad de PR en su Artículo 3 define a las *entidades corporativas* como "[l]as corporaciones públicas, *con o sin tesoro independiente,* **en cuyas leyes creadoras se especifique que el Secretario de Hacienda ejercerá algún control** sobre sus fondos y transacciones financieras. También incluye a los municipios del Estado Libre Asociado de Puerto Rico y sus instrumentalidades".[33]

La capacidad limitada para desembolsar fondos públicos únicamente para el pago de obligaciones que estuvieran autorizadas por ley, está reglamentada en el Artículo 8 de la Ley de Contabilidad de PR, el cual establece que "todas las asignaciones y los fondos autorizados para las atenciones de un año económico serán aplicados exclusivamente al pago de gastos legítimamente incurridos durante el respectivo año, o al pago de *obligaciones* legalmente contraídas y debidamente asentadas en los libros durante dicho año".[34] Cabe destacar que la ley define el término *obligación* como

---

[32] 3 LPRA sec. 283c(i)-(j).

[33] 3 LPRA sec. 283b (Énfasis suplido).

[34] 3 LPRA sec. 283g (Énfasis suplido).

"[u]n compromiso contraído que esté representado por orden de compra, *contrato* o documento similar, pendiente de pago, firmado por autoridad competente para gravar las asignaciones y que puede convertirse en el futuro en deuda exigible".[35]

A su vez, la Ley Núm. 18 de 30 de octubre de 1975, conocida como la Ley de Registros de Contratos, 2 LPRA sec. 97 *et seq.,* implantó la obligación a las "*entidades gubernamentales* y las entidades municipales del Estado Libre Asociado de Puerto Rico, *sin excepción alguna,* [de mantener] un registro de todos los contratos que otorguen, incluyendo las enmiendas a los mismos, y deberán remitir copia de éstos a la Oficina del Contralor dentro de los quince (15) días siguientes a la fecha de otorgamiento del contrato o la enmienda".[36]

Ahora bien, ¿qué incluye el término "entidad gubernamental" para efectos de esta ley? La Ley de Registros de Contratos establece que "incluirá todo departamento, agencia, instrumentalidad, oficinas y todo organismo del Estado Libre Asociado de Puerto Rico, *incluyendo a toda corporación pública,* sus subsidiarias o *cualesquiera entidad gubernamental que tenga personalidad jurídica propia, creada por ley* o que en el futuro pudiere crearse . . . , *sin excepción alguna".*[37] Además,

---

[35] 3 LPRA sec. 283b(k) (Énfasis suplido).

[36] 2 LPRA sec. 97(a) (Énfasis suplido).

[37] 2 LPRA sec.97(b) (Énfasis suplido).

la legislatura le impuso al Contralor la obligación de establecer mediante reglamento los contratos otorgados por las entidades gubernamentales que se considerarán exentos de ser remitidos a la Oficina.[38]

C. *Ley de la Autoridad de Energía Eléctrica*

La Ley Núm. 83 de 2 de mayo de 1941, conocida como la Ley de la Autoridad de Energía Eléctrica de Puerto Rico, 22 LPRA sec. 191 *et seq.* (Ley de la AEE)*,* creó la Autoridad de Energía Eléctrica (AEE) como un cuerpo corporativo y político que constituye una *corporación pública e instrumentalidad gubernamental autónoma del Gobierno de Puerto Rico*.[39] En cuanto a su regulación, en general, la Sección 3 de la Ley de la AEE establece que:

> La Autoridad creada por la presente *es y deberá ser una instrumentalidad gubernamental*, sujeta al control de su Junta de Gobierno, pero es una corporación con existencia y personalidad legales separadas y aparte de la del Gobierno de Puerto Rico. La Autoridad y su Junta de Gobierno serán reguladas por el Negociado y deberán someter, en la forma y manera dispuesta por el Negociado, toda la información requerida y solicitada por el mismo. Las deudas, obligaciones, contratos, bonos, notas, pagarés, recibos, gastos, cuentas, fondos, empresas y propiedades de la Autoridad, sus funcionarios, agentes o empleados, debe entenderse que son de la mencionada corporación y no del Gobierno de Puerto Rico ni de ninguna de sus oficinas, negociado, departamento, comisión, dependencia,

---

[38] Véase Reglamento Núm. 33 del 15 de septiembre de 2009, Registro de Contratos, Escrituras y Documentos Relacionados, y Envío de Copias a la Oficina del Contralor del Estado Libre Asociado de Puerto Rico, Art. 11.

[39] 22 LPRA sec. 193(a) (Énfasis suplido).

municipalidad, rama, agente, funcionario o empleado.[40]

Por otro lado, y como mecanismo de transparencia, la Ley de la AEE le impone a esta la obligación de publicar en su portal de Internet *todos* los contratos que perfeccione, incluyendo sus *exhibits* y anejos, donde se detalle la relación de las partes, la causa y el objeto de dichos contratos, dentro de un periodo de diez (10) días calendario de haberse firmado.[41] "La Autoridad tendrá que publicar todos los contratos, independientemente de si éstos están exentos de radicación ante la Oficina del Contralor de Puerto Rico".[42] Además, deberán publicar en internet "[t]oda la documentación relacionada a los ingresos, ventas, gastos, desembolsos, activos, deudas, cuentas por cobrar, y cualquier otra información financiera de la Autoridad".[43]

En lo concerniente a el dinero y cuentas de la AEE, la Ley de la AEE dispuso para que "[t]odos los dineros de la Autoridad se depositaran en depositarios reconocidos para los fondos del Gobierno Estadual", pero se mantuvieran en una cuenta separada inscrita a nombre de la AEE.[44] *Sobre el control de estos fondos,* **el Secretario**

---

[40] 22 LPRA sec. 193(b) (Énfasis suplido).

[41] 22 LPRA sec. 194(b).

[42] *Íd.*

[43] 22 LPRA sec. 196(k)(iv).

[44] 22 LPRA sec. 202.

*de Hacienda, mediante consulta con la AEE, tiene la responsabilidad de establecer un sistema de contabilidad para el adecuado "control y registro estadístico de todos los gastos e ingresos* pertenecientes a, o administrados o controlados por la Autoridad".[45]La Ley de la AEE dispuso además que:

> [E]l citado Secretario de Hacienda o su representante, examinará de tiempo en tiempo las cuentas y los libros de la Autoridad, incluyendo sus ingresos, desembolsos, contratos, arrendamientos, fondos en acumulación, inversiones y cualesquiera otras materias que se relacionen con su situación económica e informará sobre las mismas a la Junta de la Autoridad y a la Asamblea Legislativa.[46]

**III**

En esencia, la peticionaria plantea que la creación autónoma de la AEE y su facultad legal de operar sin la intervención del Gobierno de Puerto Rico la aleja de las disposiciones de la Ley de Contabilidad de PR, y en específico de la aplicación de las normas con relación al no pago de obligaciones contraídas si no media una relación contractual bonafide y presentada ante la Oficina del Contralor de Puerto Rico. No le asiste la razón.

De entrada, la Ley de Contabilidad de PR se creó con el propósito de autorizar al Secretario de Hacienda a intervenir en la organización fiscal, y en los sistemas y

---

[45] *Íd.* (Énfasis suplido).

[46] *Íd.*

procedimientos de contabilidad de las dependencias y entidades corporativas. Las entidades corporativas para efectos de esta ley son aquellas, con o sin tesoro independiente, en cuyas leyes creadoras se especifique que el Secretario de Hacienda ejercerá algún control. En ese contexto, y toda vez que surge claramente de la Ley de la AEE que el Secretario de Hacienda, mediante consulta con la AEE, tiene la responsabilidad de establecer un sistema de contabilidad para el adecuado control y registro de los gastos e ingresos pertenecientes a dicha corporación pública, y de examinar de tiempo en tiempo sus cuentas y libros, no albergamos dudas de que el Secretario de Hacienda sí ejerce un grado de control sobre la mencionada corporación. Como consecuencia lógica, la Ley de Contabilidad de PR y su exigencia principal de que solo se desembolsen fondos públicos para el pago de obligaciones legítimamente contraídas, le aplica a la AEE.

Independientemente de que la AEE sea un cuerpo corporativo y político que constituye una corporación pública e instrumentalidad gubernamental autónoma del Gobierno de Puerto Rico, reiteradamente hemos expresado que, a pesar de la autonomía que caracteriza a las corporaciones públicas, éstas "no pierden su cualidad de instrumentalidad gubernamental, creadas para responder a

propósitos de utilidad pública".[47] Las corporaciones públicas funcionan como herramienta para implantar una política pública en particular, cuando el Estado determina que a través de éstas logrará llevar a cabo un programa o servicio con mayor eficiencia.[48] Por lo tanto, en la medida en que poseen esta función pública, tanto el Ejecutivo como la Legislatura ejercen diferentes grados de control sobre sus funciones.[49]

Por otro lado, pero en este mismo contexto, a la AEE se le exige cumplir con las regulaciones impuestas a los entes públicos respecto a la contratación gubernamental y el hecho de ser una entidad fiscalmente independiente no la exime de su cumplimiento. La Ley de Registros de Contratos implantó la obligación a toda entidad gubernamental, sin excepción alguna, a remitir copia de sus contratos a la Oficina del Contralor. Incluso, en la Ley de la AEE se le impone la obligación de publicar todos sus contratos en su página de internet, independientemente de si éstos están exentos de radicación ante la Oficina del Contralor.[50] Como mencionáramos, el Contralor puede establecer mediante reglamento los contratos otorgados por las entidades gubernamentales que se considerarán exentos de ser

---

[47] Huertas v. Cía. Fomento Recreativo, 147 DPR 12, 20 (1998).

[48] *Íd.*

[49] *Íd.* en las págs. 20-21.

[50] *Véase* 22 LPRA sec. 194(b).

remitidos a la Oficina. No obstante, esta ley habilitadora les exige su divulgación estén o no exentos de radicación ante el Contralor.[51]

Plantear que a la AEE no le aplican las normas de contratación gubernamental sería ir en contra del propio texto de la ley y en contra de la intención legislativa que ha inspirado la creación de esta entidad gubernamental y sus enmiendas a través de los años.[52] Sabemos que, ante un texto claro e inequívoco, es nuestro deber validar la intención legislativa.[53] No es

---

[51] Cabe señalar que la AEE mantiene un registro de sus contratos en la Oficina del Contralor, los cuales pueden accederse a través del portal https://consultacontratos.ocpr.gov.pr/

[52] El 8 de junio de 2009, se promulgó la Ley de Alianzas Público Privadas, Ley Núm. 29 de 8 de junio de 2009, para establecer la política pública del Gobierno de Puerto Rico referente a las Alianzas Público Privadas. En ella, la legislatura expresamente eximió a la Autoridad de Alianzas Público Privadas, y a todo Contrato de Alianza Público Privada de las disposiciones de la Ley de Contabilidad de PR y de ciertos requisitos de contratación gubernamental. *Véase* 27 L.P.R.A. § 2618(a) & (e). Por consiguiente, cuando la legislatura ha deseado eximir de la aplicación de la Ley de Contabilidad, así expresamente lo ha hecho. A la fecha de esta opinión, la AEE estableció su propio contrato de alianza público-privada con la entidad Genera PR LLC, y a pesar de tener la posibilidad de no cumplir con los requisitos regularmente exigidos en materia de contratación gubernamental, deliberadamente pospusieron la validez de su contrato de alianza hasta tanto estuviera registrado en la Oficina del Contralor. *Véase* Puerto Rico Thermal Generation Facilities Operation and Maintenance Agreement dated as of January 24, 2023 by and among the Puerto Rico Electric Power Authority as Owner, the Puerto Rico Public-Private Partnerships Authority as Administrator, and Genera PR LLC as Operator, Section 21.14, Núm. de contrato 2023-P00093, https://consultacontratos.ocpr.gov.pr/. A tales efectos, la propia AEE se impone el cumplimiento con el requisito básico de publicación de sus contratos ante la Oficina del Contralor.

[53] Franklin Credit Management Corp. v. George Riviello, 209 DPR 555, 569 (2022). Cabe señalar que la Sección 27 de la Ley de la AEE, establece que dicha corporación pública no estará obligada por las leyes aprobadas para fines de administración gubernamental cuando éstas estén en conflicto con su estatuto habilitador. No obstante, A la Orden no nos ha ilustrado de qué manera la Ley de Contabilidad está reñida con alguna parte de la Ley de la AEE. Los requisitos de contratación gubernamental en nada vulneran la autonomía de la AEE. *Véase* 22 L.P.R.A. § 217.

responsabilidad del Poder Judicial añadir limitaciones o restricciones que no surgen en el texto de las leyes.

## IV

Establecido que la Ley de Contabilidad de PR y las reglas sobre contratación gubernamental aplican a la AEE, debemos entonces considerar si procedía desestimar la causa de acción de expropiación forzosa a la inversa contra dicha entidad.

La AEE solicitó la desestimación del pleito de epígrafe al considerar que al tomar como ciertos todos los hechos bien alegados en la *Demanda,* no se justificaba la concesión de un remedio, debido a que luego que venció el contrato de arrendamiento no existía un contrato por escrito que cumpliese con las exigencias de nuestro ordenamiento jurídico respecto a la contratación gubernamental, así que no podían desembolsar fondos públicos. Añadió que el caso trata de cobro de dinero y no sobre expropiación forzosa, por lo que A la Orden tendría derecho a cobrar la cuantía bajo la doctrina de tácita reconducción, pero esta no aplica a contratos en que el Estado es parte. Además, argumentó que el planteamiento de expropiación forzosa era académico porque ya habían firmado un nuevo contrato de arrendamiento. Tampoco le asiste la razón. Veamos.

Antes de explicar las razones por las cuales no procedía desestimar la *Demanda* de epígrafe, debemos resaltar que este caso no trata sobre la doctrina de

tácita reconducción, según fue rechazada en el caso *Vicar Builders v. ELA, supra,* pues para que opere la tácita reconducción, ninguna de las partes puede haber expresado su intención de dar por terminado el contrato de arrendamiento. Asimismo, como bajo esta doctrina luego del vencimiento del contrato de arrendamiento lo que se constituye es un nuevo contrato tácitamente, que no está registrado en la Oficina del Contralor, la tácita reconducción no es aplicable a contratos en los que el Estado sea parte. Además, en aquel caso no hubo planteamiento de índole constitucional por el cual este Tribunal pasara juicio y "nada se dispuso sobre qué remedio, si alguno, tenía disponible el dueño de una propiedad afectada u ocupada físicamente por una entidad del gobierno".[54]

Aclarado lo anterior, a pesar de que a la AEE le apliquen los requisitos de contratación gubernamental, y aun cuando en este caso no se configuraron dichos requisitos para permitir que la corporación desembolse fondos públicos por el periodo en que ocupó la propiedad sin un contrato válido, A la Orden solicitó oportunamente, al enmendar su *Demanda*, un remedio de expropiación forzosa a la inversa. Siendo ello así, "a la doctrina contractual se antepone la garantía constitucional que prohíbe tomar una propiedad privada

---

[54] Ortiz Zayas v. ELA*, supra,* en la pág. 28.

para un fin público sin consignar el pago de una justa compensación".[55]

Por lo tanto, y según expresamos ante hechos similares en el caso *Ortiz Zayas v. ELA, supra,* la expropiación forzosa a la inversa es un posible remedio que posee una parte por la incautación física de su propiedad que active el derecho al pago de una justa compensación durante un periodo de tiempo en que no existía contrato válido con el Estado. El hecho de que se haya configurado un nuevo contrato entre las partes no convierte en académica la causa de acción, ya que hemos manifestado que la incautación puede ser temporal y ninguna acción posterior del Estado puede eximirlo de su deber de proporcionar una justa compensación por el periodo de tiempo en que fue efectiva la expropiación.[56] Así como el entregar las llaves de la propiedad por parte del Departamento de Justicia no afectó el derecho a la justa compensación por expropiación temporal, como ocurrió en *Ortiz Zayas v. ELA, supra,* tampoco afecta el firmar un nuevo contrato de arrendamiento como ocurrió en este caso.

Adviértase que tanto el Tribunal de Primera Instancia como el Tribunal de Apelaciones no contaban con nuestras expresiones en *Ortiz Zayas v. ELA, supra,* al tomar su decisión desestimatoria. Ahora, si damos por

---

[55] *Íd.* en la pág. 30; Art. II, Sec. 7, Const. PR, LPRA, Tomo 1.

[56] Ortiz Zayas v. ELA*, supra,* en las págs. 15-16 & 19.

ciertos y buenos todos los hechos bien alegados por la demandante, donde la AEE ocupó por un periodo de tiempo la propiedad, vencido determinado contrato de arrendamiento y sin el pago de justa compensación, A la Orden pudiese tener derecho al remedio de expropiación forzosa a la inversa, siempre y cuando pruebe que se cumplen con los requisitos de la causa de acción, según esbozados en *Ortiz Zayas v. ELA, supra.* Para esto y a la luz de la situación más favorable, A la Orden merece la oportunidad de su día en corte.

## V

Por los fundamentos expuestos, revocamos la determinación del Tribunal de Apelaciones y, a su vez, ordenamos la devolución del caso al Tribunal de Primera Instancia para que se continúen los procedimientos judiciales conforme a lo aquí resuelto y nuestros pronunciamientos recientes en el caso *Ortiz Zayas v. ELA*, *supra.*

Se dictará Sentencia de conformidad.

Erick V. Kolthoff Caraballo
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| A la Orden Shopping, S.E.<br><br>    Peticionaria<br><br><br>    v.<br><br><br>Autoridad de Energía Eléctrica de Puerto Rico<br><br>    Recurrida | CC-2022-0662 | Certiorari |

SENTENCIA

En San Juan, Puerto Rico, a 22 de febrero de 2024.

Por los fundamentos expuestos en la Opinión que antecede la cual se hace formar parte íntegra de la presente, revocamos la determinación del Tribunal de Apelaciones y, a su vez, ordenamos la devolución del caso al Tribunal de Primera Instancia para que se continúen los procedimientos judiciales conforme a lo aquí resuelto y nuestros pronunciamientos recientes en el caso *Ortiz Zayas v. ELA*, 2023 TSPR 43 (2023).

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Rivera García concurre con el resultado sin opinión escrita. La Jueza Asociada señora Pabón Charneco no intervino. El Juez Asociado señor Feliberti Cintrón está inhibido.


                        Javier O. Sepúlveda Rodríguez
                        Secretario del Tribunal Supremo